**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BEG INVESTMENTS, LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-cv-0182 (RC) |
| | : | | |
| v. | : | Re Document No.: | 10 |
| | : | | |
| NICHOLAS ALBERTI, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S DISMISSAL OF PLAINTIFF'S CLAIMS

### I. INTRODUCTION

Plaintiff BEG Investments, LLC, believes that six members of the D.C. Alcohol Beverage Control Board ("the Board") acted unlawfully when they conditioned Plaintiff's liquor license on the hiring of a police detail to patrol the area surrounding Plaintiff's establishment. Plaintiff views the Board members' imposition of a police detail requirement as extortion, and claims that the Board members violated the Racketeer Influence and Corrupt Organizations Act ("RICO"), and the Takings Clause of the Fifth Amendment. On March 31, 2014, this Court dismissed Plaintiff's complaint, explaining that the Board members were entitled to qualified immunity as to Plaintiff's claims under RICO, and that Plaintiff's allegations relating to an obligation to pay money were insufficient to establish a takings claim under the Fifth Amendment. Now before the Court is Plaintiff's motion for reconsideration. Plaintiff contends that this Court's decision was erroneous in two respects: first, it misapplied the qualified immunity doctrine, and second, it ignored controlling Supreme Court authority that supported Plaintiff's takings claim. Upon consideration of Plaintiff's motion and the memoranda in

support thereof and opposition thereto, the Court will deny the motion for reconsideration as to both claims.

## II. FACTUAL BACKGROUND

Plaintiff is a company that operated Twelve Restaurant and Lounge in the District of Columbia. Defendants Nicholas Alberti, Donald Brooks, Herman Jones, Calvin Nophlin, Mike Silverstein, and Ruthanne Miller (collectively, "Defendants"), are members of the Board who issued a series of orders pertaining to Plaintiff's liquor license.[1]

As detailed in this Court's Memorandum Opinion of March 31, 2014,[2] the Board was established by D.C. Code § 25-201, and it is authorized to "issue licenses to persons who meet the requirements" set forth in the Alcoholic Beverage Statute and to impose "certain conditions" on those licenses if the Board "determines that the inclusion of the conditions will be in the best interest of the locality . . . where the licensed establishment is to be located." D.C. Code § 25-104(a), (e). The Board also oversees the Alcoholic Beverage Regulation Administration ("ABRA"), which provides "professional, technical, and administrative staff assistance to the Board in the performance of its functions." D.C. Code § 25-202.

On June 22, 2011, the Board issued an order on Plaintiff's application for renewal of its liquor license. Compl. ¶ 26, ECF No. 1; Board Order 2011-289.[3] After finding that there had

---

[1] The term "liquor license" is used to refer Plaintiff's Retailers' Class CT License to serve alcoholic beverages.

[2] The Court hereby incorporates by reference the factual allegations set forth in its earlier Memorandum Opinion. *See generally BEG Investments, LLC v. Alberti*, 34 F. Supp. 3d 68, 73–75 (D.D.C. 2014).

[3] The Board's June 2011 Order, which is a matter of public record and a document on which Plaintiff's complaint relies, has subsequently been filed with this Court by Defendants. *See* Def.'s Ex. A at 3–8, ECF No. 19-2; *available at*

been three assaults and fifteen calls to MPD at the establishment's address, and that MPD had increased patrols in the area due to intoxicated individuals leaving Plaintiff's establishment, the Board granted Plaintiff's application for renewal of its license on the condition that Plaintiff hire a Metropolitan Police Department ("MPD") reimbursable detail "whenever the establishment provides any entertainment permitted by the establishment's entertainment endorsement." Compl. ¶ 26; Board Order 2011-289 at 4, 7.[4]  A reimbursable detail is comprised of "MPD officers [who] patrol the surrounding area of an establishment for the purpose of maintaining public safety." *See* D.C. Code § 25-798(a)(3); Emergency Suspension of Liquor Licenses Act of 2005, D.C. Act 16-20.

Upon Plaintiff's motion for reconsideration, the Board modified its June 22 order on August 10, 2011, ordering that Plaintiff hire an MPD reimbursable detail "whenever the establishment provides any DJs or live music as entertainment at the establishment." Compl. ¶ 30; Board Order 2011-368 at 12.[5]  Additionally, the modified order required that the MPD detail "be hired for a minimum of four hours and shall end no sooner than one hour after closing." Compl. ¶ 30.  On July 11, 2012, the Board fined Plaintiff $1500 for failing to hire an MPD reimbursable detail when a DJ performed at Plaintiff's establishment on October 9, 2011. Compl. ¶ 33; Board Order 2012-301 at 22.[6]

---

http://abra.dc.gov/sites/default/files/dc/sites/abra/publication/attachments/Twelve%20Restaurant%20and%20Lounge%20-%20June%2022%202011.pdf.

[4] Page numbers refer to the numbers generated by the Court's ECF filing system.

[5] The Board's August 2011 Order, which is a matter of public record and upon which Plaintiff's complaint relies, has subsequently been filed with this Court by Defendants.  *See* Defs.' Ex. B at 10–12, ECF No. 19-2, *available at* http://abra.dc.gov/sites/default/files/dc/sites/abra/publication/attachments/Twelve%20Restaurant%20Lounge%20-%20August%2010%202011.pdf.

[6] The Board's July 2012 Order, which is a matter of public record and upon which Plaintiff's complaint relies, has subsequently been filed with this Court by Defendants.  *See*

Plaintiff initiated this action by filing a six-count complaint against Defendants in their individual capacities on February 11, 2013.  Plaintiff claimed that the Board's order requiring Plaintiff to hire an MPD detail at a rate of over $55 per hour – more than double the basic wage of police officers – was unlawful and extortionate.  As is pertinent here, Plaintiff alleged: (1) racketeering in violation of RICO, 18 U.S.C. § 1962(c); (2) conspiracy to commit racketeering in violation of RICO § 1962(d); and (3) deprivation of property interests pursuant to the Takings Clause of the Fifth Amendment.  Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the Court granted Defendants' motion.  Compl. ¶¶ 83–90, 94–98.

In its Memorandum Opinion, this Court explained that Plaintiff's two RICO claims, which were predicated on violations of the Hobbs Act, failed because Plaintiff did not allege that Defendants' imposition of a reimbursable detail violated clearly established law.  *BEG Investments*, 34 F. Supp. 3d. at 80–84.  As a result, Defendants were entitled to qualified immunity.  *Id.*  The Court also dismissed Plaintiff's Takings Clause claim, finding that Plaintiff's allegation that he was obligated to pay money was insufficient to state a claim under the Fifth Amendment.  *Id.* at 86–88.

Plaintiff now argues that the Court erred in both analyses, first by misapplying the qualified immunity doctrine to Plaintiff's extortion-based RICO claims, and second, by failing to consider the effect of *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013), on Plaintiff's Takings Clause claim.  The Court addresses each issue in turn.

---

Defs.' Ex. C at 15–23, ECF No. 19-2, *available at* http://abra.dc.gov/sites/default/files/dc/sites/abra/publication/attachments/Twelve%20Restaurant%20and%20Lounge%20-%20July%2011%202012_0.pdf.

### III.  ANALYSIS

### A.  Legal Standard

Because Plaintiff seeks reconsideration of an interlocutory order, Rule 54(b) governs the Court's analysis.  *See Judicial Watch v. U.S. Dep't of Army*, 466 F. Supp. 2d 112, 123 (D.D.C. 2006) (discussing Rule 54(b)'s application to denials of dispositive motions).  Rule 54(b) is silent, however, on the standard of review applicable to motions for reconsideration of such interlocutory decisions and orders.  "To fill this gap, courts in this district have held that 'relief upon reconsideration [of an interlocutory decision] pursuant to Rule 54(b) is available as justice requires.'"  *United States v. Coughlin*, 821 F. Supp. 2d 8, 18 (D.D.C. 2011) (quoting *Hoffman v. District of Columbia*, 681 F. Supp. 2d 86, 90 (D.D.C. 2010)).  Under the "as justice requires" standard, reconsideration may be warranted when a court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or where a controlling or significant change in the law has occurred."  *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (internal citation, quotation, and alteration omitted); *see also Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004).

"These considerations leave a great deal of room for the court's discretion and, accordingly, the 'as justice requires' standard amounts to determining 'whether relief upon reconsideration is necessary under the relevant circumstances.'"  *Lewis v. District of Columbia*, 736 F. Supp. 2d 98, 102 (D.D.C. 2010) (quoting *Cobell*, 224 F.R.D. at 272).  "[I]n general, a court will grant a motion for reconsideration of an interlocutory order only when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order."  *Stewart v. Panetta*, 826 F.Supp.2d

176, 177 (D.D.C.2011) (quoting *Johnson-Parks v. D.C. Chartered Health Plan*, 806 F. Supp. 2d 267, 269 (D.D.C. 2011)).  At the same time, a court's discretion under Rule 54(b) is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted).  A court therefore may deny a motion for reconsideration when it merely asserts "'arguments for reconsideration [that] the court has already rejected on the merits.'"  *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)).  Finally, "[t]he burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied."  *Second Chance Body Armor*, 893 F. Supp. 2d at 268.

### B. Qualified Immunity

Plaintiff's complaint alleged that Defendants violated and conspired to violate RICO by demanding payment to MPD's reimbursable detail program under color of official right but without lawful authority, using wrongful economic harm and wrongful fear of economic harm to obtain property for the benefit of MPD police officers in violation of the Hobbs Act, 18 U.S.C. § 1951.  Compl. ¶¶ 83–90.  In granting Defendants' motion to dismiss Plaintiff's RICO and underlying Hobbs Act claims, this Court explained that state actors are entitled to qualified immunity on RICO claims for "conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *BEG Investments*, 34 F. Supp. 3d at 81 (quoting *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004)).  The Court then went on to analyze the provisions of state law upon which Plaintiff relied and

6

determined that in June 2011, it was not clearly established that the Board lacked the authority to impose reimbursable details as a condition on licenses. *Id.* at 81–84.

In Plaintiff's motion for reconsideration, it does not dispute the Court's conclusion that no clearly established law limited the Board's authority to impose MPD detail conditions. And Plaintiff concedes that qualified immunity is a potential defense to a RICO claim. Pl.'s Mot. Recons. at 6, ECF No. 10. Plaintiff does argue, however, that the Court "misapplied such qualified immunity in direct conflict with controlling precedent." *Id.* at 1. Plaintiff argues that the qualified immunity "defense is not available where, as herein, the plaintiff pleads an intent to extort money from the victim regardless of the facial lawfulness of the acts improperly employed in furtherance of such extortionate acts." *Id.* at 6.

To support its position, Plaintiff directs the Court's attention – for the first time – to *Robbins v. Wilkie*, 433 F.3d 755 (10th Cir. 2006).[7] The plaintiff in *Robbins* alleged that employees of a federal agency extorted him by refusing to maintain a road to his property, bringing unfounded criminal charges against him, cancelling his permits and privileges, trespassing on his land, and interfering with his business, all in an effort to force the plaintiff to give the agency a right-of-way on the plaintiff's property. *Id.* at 768. The Tenth Circuit reasoned that even if the agency could cite regulatory provisions permitting each individual action, "if Defendants engaged in lawful actions with an intent to extort a right-of-way from [the plaintiff] rather than with an intent to merely carry out their regulatory duties, their conduct is actionable under RICO." *Id.*

---

[7] Plaintiff's opposition to Defendants' motion to dismiss made no mention of this opinion from the Tenth Circuit, citing only the Supreme Court opinion that subsequently reversed *Robbins*. *See* Pl.'s Opp'n. at 26–27, ECF No. 6.

7

As Defendants correctly point out, however, *Robbins* is not controlling precedent. In addition to being a non-binding decision from another circuit, *Robbins* was reversed by the Supreme Court in 2007.[8] *See Wilkie v. Robbins*, 551 U.S. 537, 567 (2007) (holding that "the conduct alleged does not fit the traditional definition of extortion," and finding that RICO did not give the plaintiff a cause of action). As the Supreme Court explained in *Wilkie*, the common law definition of extortion, presumably relied upon by Congress when it passed the Hobbs Act, "was a property offense committed by a public official who took any money or thing of value that was not due to him under the pretense that he was entitled to such property by virtue of his office." *Id.* at 564 (internal quotation marks omitted). The Supreme Court emphasized that common law extortion implicated private, rather than public beneficiaries, and it declined to find "extortion in efforts of Government employees to get property for the exclusive benefit of the Government." *Id.* at 564–65. The Court went on to explain that there was good reason to shield public officers from Hobbs Act liability where those officers acted aggressively to collect property owed to the Government, because the alternative "could well take the starch out of regulators who are supposed to bargain and press demands vigorously on behalf of the Government and the public." *Id.* at 566–67; *id.* at 566 ("[Agency] employees 'do not become racketeers by acting like aggressive regulators.'" (quoting *Sinclair v. Hawke*, 314 F.3d 934, 944 (C.A.8 2003))).

Even if this Court were inclined to treat *Robbins* as controlling precedent, however, subsequent Tenth Circuit case law shows that Plaintiff's RICO claims would still fail. In *Gillmor v. Thomas*, 490 F.3d 791 (10th Cir. 2007), issued shortly before the Supreme Court

---

[8] Although Plaintiff suggests that the portion of *Robbins* on which it relies remains good law because *Robbins* was reversed on other grounds, the Court notes that Plaintiff's motion for reconsideration does not cite a single post-*Wilkie* decision to support its qualified immunity argument.

8

reversed *Robbins*, the Tenth Circuit rejected a plaintiffs' argument that county officials whose actions were authorized by zoning ordinances were nevertheless liable under RICO if they acted with the intent to extort property. *Id.* at 799–800. The *Gillmor* court found the argument unpersuasive, taking care to distinguish the facts of *Robbins*, which involved allegations of "a pattern of harassing and punitive acts that were both targeted at [the plaintiff] and well outside the bounds of normal [agency] practice," from the facts in *Gillmor*, where "County Officials merely engaged in the normal administrative duties required to enforce the zoning ordinances," and the plaintiffs did "not allege that they were treated any differently than other . . . developers, all of whom are subject to" the same regulations. *Id.* at 799.

In this case, Plaintiff's allegations are analogous to those found inadequate in *Gillmor*. Far from alleging that the Board targeted Plaintiff and treated it differently than other establishments, Plaintiff's complaint actually indicates that other DC nightclubs were subject to the same reimbursable detail condition. *See* Compl. ¶¶ 35–82. Plaintiff's RICO claims and the preceding paragraphs are devoid of any allegation that a similar establishment was treated differently by the Board, or that the Board members' actions in issuing and enforcing license conditions were "well outside the bounds of normal [ABC Board] practice." *Cf. Gillmor*, 490 F.3d at 799.

Plaintiff would nevertheless have us infer a RICO conspiracy to extort because the Board imposed an otherwise lawful reimbursable detail condition after hearing testimony from MPD officers regarding the need for the detail to ensure public safety, which Plaintiff characterizes as "illegal solicitation of such details . . . in violation of the Omnibus Police Reform Amendment Act of 2000, 6A DCMR § 301.6 and MPD General Order 201.17." Pl.'s Mot. Recons. at 6. Both provisions that Plaintiff cites, however, pre-date the 2005 DC Code provision that explicitly

9

authorizes MPD to assign overtime officers to reimbursable details. *See* DC Code § 25-798 (2005). It is thus far from clear that, in June 2011, an MPD officer who testified that he or she believed that a reimbursable detail was necessary at a given establishment clearly violated the prohibitions against soliciting or providing off-duty officers' police-related services to commercial establishments as set forth in 6A DCMR § 301.6[9] and MPD General Order 201.17.[10]

Moreover, Plaintiff has failed to establish that a reasonable Board member who was authorized to impose a reimbursable detail condition, and who allegedly did so with the intent of providing additional funding to MPD, has violated a clearly established constitutional or statutory right. True, any reasonable Board member would know that extortion, or "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," is unlawful under the Hobbs Act. 18 U.S.C. § 1951(b)(2). However, the Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Here, Plaintiff's claims depend upon establishing that a reasonable Board member who engaged in the alleged conduct at issue – issuing an order consistent with the regulator's authority but with the unlawful intent to benefit MPD – "would have understood that what he is doing" violated the Hobbs Act, thereby giving rise to RICO liability. *See id.* at 2083. Plaintiff has failed to meet this burden, providing neither "controlling authority in [its] jurisdiction at the time of the incident which clearly established the rule on

---

[9] *See* D.C. Mun. Regs. tit. 6-A, § 301 (2000).

[10] MPD General Order GO-PER-201.17 (April 16, 2004), *available at* https://go.mpdconline.com/GO/PER_201_17.pdf.

10

which [it] seek[s] to rely, nor . . . a consensus of cases of persuasive authority such that a reasonable [Board member] could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Accordingly, the Court finds that Plaintiff has not shown that the Court erred by failing to consider controlling decisions, or that justice requires reconsideration of the Court's order dismissing Plaintiff's RICO and underlying Hobbs Act claims on qualified immunity grounds.

### C.  Takings Claim

Plaintiff's second argument for reconsideration is presented as a request that the Court consider "new controlling authority" related to Plaintiff's Fifth Amendment Takings Clause claim. Pl.'s Mot. Recons. at 1. Plaintiff's complaint alleged that Defendants had taken Plaintiff's property in violation of the Fifth Amendment by forcing Plaintiff "to pay for public policing services, without compensation to the Plaintiff." Compl. ¶ 97–98. When granting Defendants' motion to dismiss for failure to state a claim, this Court explained that a mere obligation to pay money is not sufficient to establish a taking under the Fifth Amendment. *BEG Investments*, 34 F. Supp. 3d at 86–88 ("[A] majority of the federal appellate courts have held that a mere payment of money, without more, is not a taking within the meaning of the Takings Clause."); *see Commonwealth Edison Co. v. United States*, 46 Fed. Cl. 29, 37–41 (Fed. Cl. 2000) (collecting cases). Plaintiff now contends that a Supreme Court opinion decided after the parties completed briefing on the motion to dismiss but before the issuance of this Court's Order requires reconsideration of Plaintiff's Takings claim. Specifically, Plaintiff argues that *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013), provides new support for Plaintiff's claim because it held that the "impermissible denial of a governmental benefit is a constitutionally cognizable injury," *id.* at 2596, and the liquor license that Plaintiff would have

11

lost if it refused to pay for the MPD detail is such a governmental benefit. This "supervening authority," Plaintiff contends, directly contradicts those authorities relied upon by this Court. Pl.'s Mot. Recons. at 9.

Plaintiff is incorrect. In *Koontz*, a state agency sought to circumvent the Supreme Court's holdings in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), which together held that "a unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz*, 133 S.Ct. at 2591. The agency in *Koontz*, rather than directly conditioning its land-use permit approval on the relinquishment of the plaintiff's property, instead provided the plaintiff with the choice of either relinquishing his property or paying to improve other public lands, denying the permit when the plaintiff refused to yield. *Id.* at 2592–93. The Supreme Court explained that the requirements of *Nollan* and *Dolan* did not change "depending on whether the government *approves* a permit on the condition that the applicant turn over property or *denies* a permit because the applicant refuses to do so." *Id.* at 2595. The Court went on to explain that the agency's alternative demand for money also did not satisfy *Nollan* and *Dolan*. The Court acknowledged that in *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), five justices agreed that "the Takings Clause does not apply to government-imposed financial obligations that 'do not operate upon or alter an identified property interest." *Koontz*, 133 S. Ct. at 2599 (internal quotation marks omitted). Nevertheless, *Eastern Enterprises* was readily distinguishable from *Koontz*, the Court explained, because in *Koontz*, "unlike *Eastern Enterprises*, the monetary obligation burdened petitioner's ownership of a specific parcel of land." *Id.* (analogizing to decisions finding that the government must pay just

compensation when it takes a lien, because a lien is "a right to receive money that is secured by a particular piece of property").

Although Plaintiff would have this Court extend *Koontz* well beyond the land-use permit context to a situation involving monetary obligations necessitated by a liquor license condition, *Koontz* explicitly prevents such a reading. The Supreme Court clearly stated that "the fulcrum [*Koontz*] turns on is the direct link between the government's demand and a specific parcel of property." *Id.* at 2600. No such direct link to real property is present in this case. And if there were any doubt about the possible extension of *Koontz*'s takings analysis to obligations to pay money to the government untethered to specific parcels of property in the land-use permit setting, *Koontz* helpfully clarifies that "[t]his case . . . does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners." *Id.* at 2601.

In short, *Koontz* addresses the scope of *Nollan* and *Dolan* and the application of the Takings Clause to the land-use permitting process, but none of those subjects are implicated in this case. This Court's analysis of Plaintiff's Takings Clause claim pursuant to *Eastern Enterprises* is unaffected by *Koontz*,[11] and Plaintiff has failed to meet its burden "to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Second Chance Body Armor*, 893 F. Supp. 2d at 268. Plaintiff's motion for reconsideration of its takings claim on the basis of intervening authority is denied.

---

[11] *See Am. Council of Life Insurers v. District of Columbia*, 2014 WL 5893464, at *20 (D.D.C. Nov. 13, 2014) (holding that because "*Koontz* did not alter the majority view of the Supreme Court, as reflected by the plurality in *Eastern Enterprises*, . . . a general monetary exaction does not qualify as a specific, identifiable property interest to serve as a predicate for a takings claim") (internal quotation marks and citation omitted).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is denied.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  March 24, 2015                                                                 RUDOLPH CONTRERAS
                                                                                                         United States District Judge