**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BEG INVESTMENTS, LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 13-cv-0182 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 14, 18, 21 |
| | : | | |
| NICHOLAS ALBERTI, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DEFENDANTS' MOTION TO STRIKE OR DISMISS THE AMENDED COMPLAINT,
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO FILE SUPPLEMENTAL
COMPLAINT, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
SANCTIONS**

## I. INTRODUCTION

Plaintiff BEG Investments, LLC, operated Twelve Restaurant and Lounge, a nightclub in

the District of Columbia.  As a consequence, Plaintiff's business was regulated by the D.C.

Alcohol Beverage Control Board ("the Board"), an administrative body tasked with approving,

changing, suspending, and revoking liquor licenses for establishments serving alcoholic

beverages in the District.  In June 2011, after reports of multiple violent incidents at Plaintiff's

establishment, the Board granted Plaintiff's application to renew its liquor license, but did so on

the condition that Plaintiff hire a police detail to patrol the area surrounding its establishment

when Plaintiff provided certain types of live entertainment.  Plaintiff filed suit against six

members of the Board in February 2013, arguing that the condition on its liquor license was

discriminatory and extortionate.  This Court dismissed Plaintiff's six-count complaint on March

31, 2014, on qualified immunity grounds and for failure to state a claim, but gave Plaintiff leave

to amend its First Amendment and Equal Protection Clause claims.  Plaintiff filed an amended complaint on April 30, 2014.

On June 6, 2014, after an assault occurred at Plaintiff's establishment, the Board summarily suspended Plaintiff's liquor license.  Plaintiff views the suspension and other actions taken by the Board after Plaintiff filed its first complaint as retaliatory, and Plaintiff filed a motion to supplement its complaint with these allegations on July 16, 2014.  The supplemental complaint named two additional Board members as Defendants, as well as a Sergeant with MPD and an attorney for the District of Columbia's Office of the Attorney General ("OAG").  Now before the Court are Defendants' motion to strike the amended complaint or, in the alternative, to dismiss all claims, Plaintiff's motion to supplement its complaint, and Defendants' motion for Rule 11 sanctions.  Upon consideration of the parties' motions and the memoranda in support thereof and opposition thereto, the Court will grant Defendants' motion to strike or dismiss the amended complaint, grant in part and deny in part Plaintiff's motion to supplement its complaint, and grant in part and deny in part Defendants' motion for Rule 11 sanctions.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's First Complaint

Plaintiff is a company that formerly operated Twelve Restaurant and Lounge in the District of Columbia.  Defendants Nicholas Alberti, Donald Brooks, Herman Jones, Calvin Nophlin, Mike Silverstein, and Ruthanne Miller are members of the Board who have issued a series of orders pertaining to Plaintiff's liquor license.[1]

---

[1] The term "liquor license" is used to refer to Plaintiff's Retailers' Class CT License to serve alcoholic beverages.

As detailed in this Court's Memorandum Opinion of March 31, 2014,[2] the Board was established by D.C. Code § 25-201, and it is authorized to "issue licenses to persons who meet the requirements" set forth in the Alcoholic Beverage Statute and to impose "certain conditions" on those licenses if the Board "determines that the inclusion of the conditions will be in the best interest of the locality . . . where the licensed establishment is to be located." D.C. Code § 25-104(a), (e). The Board also oversees the Alcoholic Beverage Regulation Administration ("ABRA"), which provides "professional, technical, and administrative staff assistance to the Board in the performance of its functions." D.C. Code § 25-202.

On June 22, 2011, the Board issued an order on Plaintiff's application for renewal of its liquor license. Board Order 2011-289 at 7, Defs.' Ex. A, ECF No. 19-2;[3] Compl. ¶ 26, ECF No. 1.[4] After finding that there had been three assaults and fifteen calls to the Metropolitan Police Department ("MPD") at the establishment's address, and that MPD had increased patrols in the area due to intoxicated individuals leaving Plaintiff's establishment, the Board granted Plaintiff's application for renewal of its license on the condition that Plaintiff hire an MPD reimbursable

---

[2] The Court hereby incorporates by reference the facts set forth in its earlier Memorandum Opinion. *See generally BEG Investments, LLC v. Alberti*, 34 F. Supp. 3d 68 (D.D.C. 2014), ECF No. 9.

[3] Page numbers refer to the numbers generated by the Court's ECF filing system.

[4] Defendants attached a complete copy of the pertinent Board orders, Board transcripts, and ABRA investigative report on which Plaintiff's complaint relies. *See* Defs.' Mot. Dismiss, ECF No. 14-3; Defs.' Opp'n Mot. Leave to Suppl., ECF No. 19-2. Plaintiff quotes from and refers to the documents repeatedly, incorporating them in both its amended and supplemental complaints. *See, e.g.*, Pl.'s Am. Compl. ¶ 31 (citing and quoting from Board Order 2011-289); Suppl. Compl. ¶¶ 36–37 ECF No. 18–1 (summarizing and citing Board Order 2014-218). Plaintiff has not disputed the authenticity of the documents, which are a matter of public record. Accordingly, the Court may consider the documents without turning Defendants' motion to dismiss into a motion for summary judgment. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (in deciding a motion under Federal Rule of Civil Procedure 12(b)(6), a court may consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice").

detail "whenever the establishment provides any entertainment permitted by the establishment's entertainment endorsement." Board Order 2011-289 at 4, 7, Defs.' Ex. A. A reimbursable detail is comprised of "MPD officers [who] patrol the surrounding area of an establishment for the purpose of maintaining public safety." *See* D.C. Code § 25-798(a)(3); Emergency Suspension of Liquor Licenses Act of 2005, D.C. Act 16-20.

Upon Plaintiff's motion for reconsideration, the Board modified its June 22 order on August 10, 2011, ordering that Plaintiff hire an MPD reimbursable detail "whenever the establishment provides any DJs or live music as entertainment at the establishment." Board Order 2011-368 at 12, Defs.' Ex. B, ECF No. 19-2. Additionally, the modified order required that the MPD detail "be hired for a minimum of four hours and shall end no sooner than one hour after closing." *Id.* On July 11, 2012, the Board fined Plaintiff $1500 for failing to hire an MPD reimbursable detail when a DJ performed at Plaintiff's establishment on October 9, 2011. Board Order 2012-301 at 22, Defs.' Ex. C., ECF No. 19-2.

Plaintiff initiated this action by filing a six-count complaint against Defendants in their individual capacities on February 11, 2013. *See generally* Compl., ECF No. 1. Plaintiff claimed that the Board's orders requiring Plaintiff to hire an MPD detail at a rate of over $55 per hour – more than double the basic wage of police officers – was unlawful and extortionate. Plaintiff alleged: (1) racketeering in violation of RICO, 18 U.S.C. § 1962(c); (2) conspiracy to commit racketeering in violation of RICO § 1962(d); (3) deprivation of equal protection of the law; (4) deprivation of property in violation of the Takings Clause of the Fifth Amendment; (5) deprivation of freedom of speech in violation the First Amendment; and (6) conspiracy to deprive Plaintiff of equal protection of the laws in violation of 42 U.S.C. § 1985. Defendants

moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), and the Court granted Defendants' motion.  *See* Order, ECF No. 8.

In its Memorandum Opinion, this Court explained that Plaintiff's RICO claims, which were predicated on violations of the Hobbs Act, failed because the unlawfulness of Defendants' imposition of a reimbursable detail was not clearly established.  *BEG Investments*, 34 F. Supp. 3d. at 80–84.  As a result, Defendants were entitled to qualified immunity on the RICO and Hobbs Act claims.  *Id.*  Additionally, the Court found that Plaintiff's allegations were inadequate to state an Equal Protection Clause, Fifth Amendment, or First Amendment claim.  *Id.* at 84–88. Although the Court dismissed Plaintiff's complaint in its entirety, it did grant Plaintiff leave to amend its claims brought pursuant to the Equal Protection Clause and the First Amendment because Plaintiff had alleged additional facts pertaining to those claims in its opposition brief. Order, ECF No. 8.

## B.  Plaintiff's Amended Complaint

On April 30, 2014, Plaintiff filed an amended complaint against the same six Defendants, this time in both their individual and official capacities.  Am. Compl. ¶¶ 3–4, ECF No. 12. Notably, the amended complaint was not limited to Plaintiff's Equal Protection Clause and First Amendment claims, which the Court had given Plaintiff leave to amend.  Instead, the amended complaint reasserted all six of Plaintiff's previously dismissed claims and added a seventh claim that Defendants violated the Civil Rights Act of 1964 by targeting establishments like Plaintiff's "for the purpose of inhibiting the free association of young black African Americans and to inhibit the playing of 'urban' styles of music such as R&B, Hip-Hop and Go-Go music."  Am. Compl. ¶ 119.

Defendants, pointing out that Plaintiff had not obtained either their consent or the Court's leave to amend as required by Federal Rule of Civil Procedure 15(a)(2), have moved to strike the amended complaint, with the exception of Plaintiff's Equal Protection Clause and First Amendment claims.  Defs.' Mot. Strike at 6, ECF No. 14-1.  Alternatively, Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  *Id.* at 1.

### C.  Plaintiff's Supplemental Complaint

On July 16, 2014, Plaintiff filed a two-page motion for leave to file a supplemental complaint to include events that occurred after Plaintiff filed its first complaint, pursuant to Federal Rule of Civil Procedure 15(d).  Pl.'s Mot. Leave to Suppl. Compl. at 1–2., ECF No. 18. The supplemental complaint named four new Defendants: Amy Schmidt-Banker, an OAG attorney who prosecuted a noise violation complaint against Plaintiff; Alexander Pope, III, a Sergeant with MPD who responded to an assault at Plaintiff's establishment and reported to an ABRA investigator regarding Plaintiff's handling of the incident; and Board members Victor Rodriguez and James Short, Jr.  The supplemental complaint also included six new claims: three claims of First Amendment retaliation under 42 U.S.C. § 1983,[5] a defamation *per se* claim, a defamation *per quod* claim, and an equal protection claim under 42 U.S.C. § 1985.

According to Plaintiff, Ms. Schmidt violated Plaintiff's First Amendment rights by fabricating a noise complaint against Plaintiff in retaliation for the filing of this lawsuit.  Suppl. Compl. ¶¶ 58–63, ECF No. 18-1.  Plaintiff alleges that it received a Notice of Status Hearing and

---

[5] In light of the request in Plaintiff's supplemental complaint for damages, as well as Plaintiff's assertion of constitutional violations against individuals acting under color of state authority, the Court infers that Plaintiff's First Amendment retaliation claims – Counts VII, XI, and X – are brought pursuant to 42 U.S.C. § 1983 (providing civil liability against persons acting under color of District of Columbia law who violate the constitution).

Show Cause hearing on March 13, 2013 – approximately one month after Plaintiff filed its first complaint – detailing a noise complaint that allegedly occurred more than seven months prior, on July 26, 2012. *Id.* ¶¶ 6–9. Citing inconsistent allegations regarding the time the noise violation occurred, the inability of the ABRA investigator to provide details about the complainant, and the Board's decision to dismiss the charge for lack of sufficient evidence, Plaintiff alleges that the investigative report and other documents related to the noise complaint "were wholly fabricated by Schmidt and other unknown persons" after Plaintiff filed its first complaint in this case. *Id.* ¶¶ 10–24.

Next, Plaintiff alleges that the Board cancelled Plaintiff's liquor license and closed its establishment on May 14, 2014, for the improper purpose of interfering with this suit and in violation of Plaintiff's First Amendment rights. *Id.* ¶¶ 72–79. By way of background, Plaintiff explains that it properly submitted its license renewal application on September 6, 2013, but that Plaintiff's representative became ill and failed to appear or to request a continuance of Plaintiff's December 11, 2013, status hearing. *Id.* ¶¶ 25–26. As a consequence of Plaintiff's failure to appear, the Board dismissed the September 2013 renewal application. *Id.* ¶ 27. Plaintiff subsequently requested that its application be reinstated, but the Board refused, so Plaintiff reapplied for renewal on February 7, 2014. *Id.* ¶¶ 28–30. The Board held a hearing on the second renewal application on April 21, 2014, but Plaintiff contends it did not receive notice of the scheduling of the hearing. *Id.* ¶¶ 31–33. When Plaintiff again failed to appear, the Board dismissed the second renewal application and instructed Plaintiff that it could request reinstatement of its application within ten days. *Id.* ¶¶ 32, 34. Plaintiff did not request reinstatement of the second renewal application and instead submitted a third renewal application to ABRA on April 28, 2014. *Id.* ¶¶ 33, 35. On May 12, 2014, the Board ordered Plaintiff to

cease selling alcoholic beverages, citing Plaintiff's failure to apply for reinstatement of its second renewal application. *Id.* ¶¶ 36–37. The Board's order, however, failed to acknowledge the fact that Plaintiff had already filed a third renewal application with ABRA. *Id.* Plaintiff alleges that its third application was readily evident, that its license was not yet expired, and that the Board's decision to order Plaintiff to cease operations was predicated on "information they knew or should have known by reasonable inquiry to be false." *Id.* ¶¶ 36–37, 74–76. The Board subsequently vacated the May 12 order on May 21, 2014, and it permitted Plaintiff to resume operations while its third renewal application was being processed. Board Order 2014-228 at 67, Defs.' Ex. J, ECF No. 19-2.

On May 24, 2014, three days after the Board allowed Plaintiff to resume operations, an assault occurred in Plaintiff's establishment. *See* Suppl. Compl. ¶¶ 38–39. The Chief of MPD temporarily suspended the operation of Plaintiff's establishment, finding that the violent crime was directly connected to Plaintiff's establishment and that it severely endangered the public. *Id.* Plaintiff alleges that MPD's Sergeant Pope, who responded to the assault, falsely reported to an ABRA investigator that the establishment did not immediately comply with police instructions after the assault, that emergency respondents had difficulty reaching and transporting the victim due to the establishment's lack of assistance, that Plaintiff's staff were not cooperative, and that the scene was chaotic. *Id.* ¶¶ 40–46. Plaintiff contends that Sergeant Pope denied making those allegations when he took the stand at a subsequent evidentiary hearing before the Board, that video evidence contradicted a number of the allegations, and that the Board's June 6, 2014, order suspending Plaintiff's liquor license contained a number of factual assertions that lacked evidentiary support. *Id.* ¶¶ 46–56. Accordingly, Plaintiff claims that the Board's June 2014

order was based on information known by the Board to be false and intended to interfere with Plaintiff's prosecution of this case in violation of Plaintiff's First Amendment rights.

Plaintiff also alleges that Sergeant Pope's false statements to the ABRA investigator constitute defamation *per se* and defamation *per quod*, *id.* ¶¶ 80–94, and that Defendants have conspired to deprive Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1985. *Id.* ¶¶ 95–98.

Defendants oppose Plaintiff's motion to file a supplemental complaint on the grounds that to allow it would be futile.  Defs.' Opp'n Mot. Leave to Suppl. Compl., ECF No. 19.

## III.  LEGAL STANDARDS

### A.  Legal Standards for Amending and Supplementing a Complaint

Under Federal Rule of Civil Procedure 15, if a plaintiff wants to amend his complaint more than 21 days after a responsive pleading has been filed, he must seek consent from the defendants or leave from the Court.  *See* Fed.R.Civ.P. 15(a); *Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*, 893 F. Supp. 2d 46, 47–48 (D.D.C. 2012).  Pursuant to Rule 15, a court should grant leave to amend a complaint when "justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996). However, a court may deny a motion to amend if the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  "An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss."  *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002); *see also Oladokun v. Corr. Treatment Facility*, No. 13-cv-0358, 2013 WL 6147940, at *13 (D.D.C. Nov. 22, 2013) ("[I]n assessing an argument that an

amendment would be futile, the court must assess the proposed amendments under the same standard as would be applied to a motion to dismiss.").

Unlike an amended complaint, which "typically rest on matters in place prior to the filing of the original pleading," *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002), a supplemental complaint sets forth "transaction[s], occurrence[s], or event[s] that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A supplemental complaint is used "to set forth new facts that update the original pleading or provide the basis for additional relief; to put forward new claims or defenses based on events that took place after the original complaint or answer was filed; [and] to include new parties where subsequent events have made it necessary to do so." *Hicks*, 283 F.3d at 386 (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504 (3d ed. 2010)).

Before filing a supplemental complaint, a plaintiff must first seek the Court's permission. *Hall v. C.I.A.*, 437 F.3d 94, 100 (D.C. Cir. 2006) ("Such supplements always require leave of the court."); *see also* Fed. R. Civ. P. 15(d) (providing that a court "may, on just terms, permit a party to serve a supplemental pleading"). A motion to supplement a pleading is "to be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *Hall*, 437 F.3d at 101 (internal quotation marks omitted). As is the case when a plaintiff seeks leave to amend a complaint, however, a court may deny a motion to file a supplemental complaint as futile "if the proposed claim[s] would not survive a motion to dismiss." *Hettinga v. United States,* 677 F.3d 471, 480 (D.C. Cir. 2012) (affirming denial of leave to file a supplemental complaint); *Oladokun*, 2013 WL 6147940, at *3 (explaining that when a party argues that a claim is futile because it would not survive a motion

to dismiss, the claim is analyzed "under the same standard as would be applied to a motion to dismiss" pursuant to Rule 12(b)(6).

### B.  Legal Standard for Motions to Dismiss under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of its prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.  A court need not

accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## IV.  ANALYSIS

### A.  Failure to Seek Leave to Amend: RICO & Takings Clause Claims

Defendants first argue that this Court should strike Plaintiff's amended complaint – with the exception of those claims for which Plaintiff received the Court's leave to amend – because Plaintiff failed to abide by the requirements of Federal Rule of Civil Procedure 15(a).  Rule 15(a) provides that a plaintiff "may amend its pleading *only* with the opposing party's written consent or the court's," Fed. R. Civ. P. 15(a)(2) (emphasis added), and Plaintiff obtained neither. By way of response, Plaintiff argues that it had already received the Court's leave to amend its First Amendment and Equal Protection Clause claims, and it is aware of "no authority for the proposition that once leave is granted to a Plaintiff to amend a Complaint, such amendments are somehow confined to the exceptions specifically noted by the Court in granting the amendment." Pl.'s Opp'n to Mot. Strike at 1–2, ECF No. 16.

To find such authority, Plaintiff need only have consulted the plain language of this Court's March 31, 2014, Order.  In that Order, the Court clearly stated that "Plaintiff is granted leave to amend its claims *brought pursuant to the Equal Protection Clause and the First Amendment*."[6]  Order at 1 (emphasis added).  The Order did not contain a general grant of leave to amend.  Neither did it provide Plaintiff with leave to amend its two RICO claims, which the

---

[6] Although Rule 15(a) does not explicitly authorize courts to impose conditions, restrictions, or limitations when granting leave to amend, courts have long held that such authority exists.  *See, e.g.*, 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1486 (3d ed. 2010) (collecting cases and explaining that a court "may narrow the scope of the amendment" under Rule 15(a), and that "refusal to comply with the conditions imposed by the court normally will result in a denial of the right to amend").

Court dismissed on qualified immunity grounds.  Similarly absent was a grant of leave to amend

Plaintiff's Takings Clause claim, which the Court dismissed pursuant to Rule 12(b)(6) because

the claim was premised on the payment of funds to MPD and an obligation to pay money does

not constitute a taking under the Fifth Amendment.  *See BEG Investments*, 34 F. Supp. 3d at 87–

88.  And yet, Plaintiff has reasserted both its Takings Clause claim and its RICO claims without

seeking leave to do so.

  This is not the first time that Plaintiff has attempted to amend its complaint in an

improper manner.  Indeed, the Court's limited grant of leave to amend was intended to allow

Plaintiff to correct precisely that problem.  As the Court's Memorandum Opinion explained,

Plaintiff's brief in opposition to Defendants' motion to dismiss contained new facts pertinent to

its First Amendment and Equal Protection Clause claims that did not appear in Plaintiff's

complaint.  *BEG Investments*, 34 F. Supp. 3d. at 85–86.  Because "a complaint may not be

amended by the briefs in opposition to a motion to dismiss," *Coleman v. Pension Ben. Guar.

Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000), the Court was unable to consider those new facts

when ruling on Defendants' motion to dismiss.  In the interests of justice, however, the Court

elected to  grant Plaintiff leave to amend its Equal Protection Clause and First Amendment

claims *sua sponte* so that Plaintiff might include all facts pertinent to those claims in its

complaint.  *BEG Investments*, 34 F. Supp. 3d. at 85–86, 88.

  Once more, however, Plaintiff has attempted to amend its complaint in an impermissible

manner, this time by ignoring the limitations of this Court's Order and failing to comply with

Federal Rule of Civil Procedure 15(a).  Plaintiff is correct that "this Court has denied motions to

strike amended pleadings when a party intended to comply with, and did not cavalierly disregard,

a scheduling order," *Greggs v. Autism Speaks, Inc.*, 987 F. Supp. 2d 51, 54 (D.D.C. 2014), but

Plaintiff has given no indication that this is such a case.  Plaintiff is represented by counsel, and in the event that Plaintiff's attorney was unfamiliar with the requirements of Rule 15(a), Defendants' motion to strike the amended complaint clearly set forth those requirements.   To this day, however, Plaintiff has not sought leave to amend its complaint.  Neither has Plaintiff suggested a plausible reading of the Court's Order that would authorize Plaintiff to amend all claims, and the Court is at a loss to supply one.

Plaintiff's final effort to defend its course of action is to assert that "Defendants' hypertechnical and baseless claim that the Plaintiff violated Rule 15(a) will matter little to anyone" when Plaintiff files its supplemental complaint, which "will make these amendments pale in comparison."  *See* Pl.'s Opp'n Mot. Strike at 3.  Though Plaintiff's clear violation of the Rules of Civil Procedure and this Court's Order may "matter little" to Plaintiff, the Court does not share this view.  If Plaintiff viewed the Court's *sua sponte* grant of leave to amend as too narrow, Plaintiff was free to seek the Court's leave to make additional amendments.  Plaintiff was not, however, free to simply ignore the limitations of the Court's Order and the requirements of the Federal Rules.

The Court therefore grants Defendants' motion to strike Counts I, II, and V – Plaintiff's RICO and Fifth Amendment claims – from the amended complaint.  *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, No. 1:12-CV-258-WSD, 2014 WL 1870734, at *12 (N.D. Ga. May 9, 2014) (dismissing two counts of an amended complaint where the plaintiff did not seek the Court's leave to amend as required by Rule 15(a)(2), and the claims were not among those that the Court's order previously gave plaintiff leave to amend); *Pinson v. U.S. Dep't of Justice*, 975 F. Supp. 2d 20, 28 (D.D.C. 2013) (striking second amended complaint filed without first seeking court's leave); *see also United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296

(5th Cir. 2003) ("[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient.  The failure to obtain leave results in an amended complaint having no legal effect."); *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998) ("Because Murray's amended complaint was not properly filed pursuant to Rule 15 [because he failed to seek leave of court or consent of defendants before filing], it had no legal effect . . . .").

## B.  Futility of Amendment: RICO & Takings Clause Claims

Alternatively, even if Plaintiff had sought leave to amend Counts I, II, and V as required by Rule 15, the Court would not have granted it on grounds of futility.  An amendment is futile "if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."  *Robinson*, 211 F. Supp. 2d at 114.  "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James Madison Ltd.*, 82 F.3d at 1099.

### 1.  Individual Capacity RICO Claims

As Defendants correctly point out, the RICO and RICO conspiracy claims in Plaintiff's amended complaint are virtually identical to those previously considered and dismissed by this Court, reflecting only two changes.  First, in the "relevant facts" section of Plaintiff's amended complaint, Plaintiff adds that "[i]n some instances, an establishment will schedule and pay for the Reimbursable Detail, but no officers will show up for the detail."  Am. Compl. ¶ 26.  Second, Plaintiff has added to Count I the assertion of an interstate commerce nexus.  *See id.* ¶ 107(e) ("By demanding payment to Reimbursable Detail program for the purpose of extorting money from the Plaintiff, the Defendants have obstructed, delayed, and affected commerce within the District of Columbia in violation of the Hobbs Act, 18 U.S.C. § 1951.").  Count II, alleging a

RICO conspiracy, is entirely unchanged from Plaintiff's first complaint.   *Compare* Compl. ¶¶ 87–90 *with* Am. Compl. ¶¶ 108–11.

Plaintiff asserts generally that it "has endeavored to address and rehabilitate [its claims] to the Court's satisfaction."  *See* Pl.'s Opp'n Mot. Strike at 2.  But Plaintiff offers no argument or explanation as to how either of Plaintiff's proposed amendments could be considered responsive to the basis of this Court's earlier dismissal of Plaintiff's RICO claims against Defendants in their individual capacities.  The Court did not dismiss the claims due to Plaintiff's failure to allege either the existence of an interstate commerce nexus or the occasional unreliability of reimbursable details.  Rather, the Court found that Defendants were "entitled to qualified immunity on the RICO and Hobbs Act claims because Plaintiff has failed to allege that Defendants' imposition of a Reimbursable Detail violated clearly established law."  *BEG Investments*, 34 F. Supp. 3d at 80.  Plaintiff's proposed amendments do not change this conclusion.  Thus, the Court finds that Plaintiff's RICO claims are unable to survive a motion to dismiss on qualified immunity grounds, *see id.* at 80–84, and that Plaintiff's proposed RICO and RICO conspiracy claims against Defendants in their individual capacities would be futile.  *See Robinson*, 211 F. Supp. 2d at 114 ("An amendment would be futile if it merely . . . reasserts a claim on which the court previously ruled . . . .").

### 2.  Official Capacity RICO Claims

Plaintiff's RICO claims against Defendants in their official capacities, presented for the first time in the amended complaint, are just as infirm as Plaintiff's individual capacity claims.  "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official," *Hafer v. Melo*, 502 U.S. 21, 25 (1991), Plaintiff's RICO claims against the Board members in their official capacities are effectively RICO claims against the District of

Columbia.  Defendants maintain that this is a fatal defect, because a civil RICO claim "cannot be maintained against a municipal corporation."  *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 914 (3d Cir. 1991).

RICO provides a right of action against any "person," defined as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), and dictates that a successful plaintiff "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee," § 1964(c).  There is no question that the District of Columbia is a "person" within the meaning of RICO, but that fact alone does not end the Court's inquiry.  Two additional matters bear on the ability of this Court to find the District liable under RICO: (1) the punitive nature of RICO's treble damages provision, and (2) the inability of a governmental entity to form the malicious intent necessary to commit the underlying Hobbs Act violation that gives rise to RICO liability.

In *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), the Supreme Court described the well-established common law proposition that municipal corporations are immune from punitive damages.  *Id.* at 259–63.  The Court explained that "officials' malice should not be attributed to the taxpaying citizens of the community" via an award of punitive damages.  *See id.* at 261.  The Court also cited with approval a state supreme court opinion finding that "a municipality could not be found liable for treble damages under a trespass statute, notwithstanding the statute's authorization of such damages against 'any person,'" because municipal corporations, unlike their officers, cannot commit willful and malicious acts.  *See id.* (citing *Hunt v. City of Boonville*, 65 Mo. 620, 625 (1877)).  The Court went on to observe that "[j]udicial disinclination to award punitive damages against a municipality has persisted to the present day in the vast majority of jurisdictions," *id.* at 260, and that "[t]he general rule today is that no punitive damages are

allowed unless expressly authorized by statute." *Id.* at 260 n. 21; *see also Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975) (per curiam) (holding that the "District of Columbia is not liable for punitive damages").

Applying the Supreme Court's municipal immunity analysis to RICO, the Third Circuit observed in *Genty* that RICO requires an award of treble damages, "a civil remedy far in excess of the amount necessary to compensate an injured RICO victim." *Genty*, 937 F.2d at 912. "[B]earing in mind the strong weight of authority which supports the characterization of treble damages as punitive," as well as the absence of any express statutory language providing for municipal liability, the *Genty* court held "that RICO's overall purpose to thwart the generalized harm wrought by racketeering activity, its dependence on statutory crimes, and the mandatory provision for treble damages are sufficient evidence of Congress' intention that the treble damages provision serve a predominantly punitive purpose." *Id.* at 914. As a consequence, the court concluded that a civil RICO claim could not be maintained against a municipal corporation. *Id.* at 914; *see also Tengood v. City of Philadelphia*, 529 F. App'x 204, 209 (3d Cir. 2013) (applying *Genty* and affirming dismissal of civil RICO claims against a city); *Navajo Nation v. Peabody Holding Co.*, 209 F. Supp. 2d 269, 272 (D.D.C. 2002) (describing the Court's earlier grant of a motion to dismiss RICO claims against a municipal corporation that could not be liable under RICO for punitive damages).

The Third Circuit is not alone in finding municipal corporations immune from civil RICO liability. In *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397 (9th Cir. 1991), the Ninth Circuit held that RICO claims brought against government entities must fail. *Id.* at 404. The Ninth Circuit reasoned that "[s]ince civil RICO damages are not merely compensatory, but are trebled, *Newport* is compelling," and "public policy is offended if

all the citizens of a state are made liable for extraordinary damages as a result of the actions of a few dishonest officials." *Id.* at 404–05. Moreover, the court explained, "government entities are incapable of forming a malicious intent." *Id.* at 404; *see also Newport*, 453 U.S. at 263 n.23 (citing "respectable authority" that municipal corporations "cannot, as such, be supposed capable of doing a criminal act, or a willful and malicious wrong"). Because the plaintiff's RICO claim was based on a predicate criminal act with an intent requirement, the court concluded that municipal liability was not available. *Id.* at 261*; see also Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996) (applying *Lancaster* and summarily rejecting RICO claims against a city because "government entities are incapable of forming the malicious intent necessary to support a RICO action") (internal quotation marks omitted).

The Second Circuit has also rejected claims that a municipality can be liable under RICO. *See Rogers v. City of New York*, 359 F. App'x 201, 204 (2d Cir. 2009) (citing *Pedrina* and holding that "there is no municipal liability under RICO"); *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 457 (S.D.N.Y. 1998) *aff'd*, 182 F.3d 899 (2d Cir. 1999) (noting that "every court in this Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality").

Against the weight of opinions from the Second, Third, and Ninth Circuits,[7] Plaintiff has failed to point this Court to a single case holding that a civil RICO action may be maintained against a municipal defendant. Plaintiff nevertheless characterizes Defendants' reliance on *Genty* as improper and argues that this Court should rely instead on *First American Corp. v. Al-*

---

[7] *See also United States v. Cianci*, 378 F.3d 71, 82–83 (1st Cir. 2004) (distinguishing between naming a municipal entity as part of a RICO enterprise, which is permissible as a matter of law, and naming a municipality as a defendant in a RICO case, which is arguably a legal impossibility).

*Nahyan*, 948 F. Supp. 1107 (D.D.C. 1996), which held that "[a]lthough the treble damages

provisions of a civil RICO suit may suggest a punitive element, the overriding purpose of RICO

is to provide a remedy to persons injured as a result of racketeering activity." *Id.* at 1122.

    Plaintiff's reliance on *First American*, a case that did not address the subject of municipal

liability under RICO, is unavailing.  The Court in *First American* considered the question of

whether RICO is primarily punitive or remedial only for the purpose of determining whether a

civil RICO suit could survive the death of the defendant. *Id.* at 1122.  Additionally, *First*

*American* expressly distinguished the facts in *Genty*, where the treble damages provision was

punitive because the case involved "potential municipal liability where actual damages were

easily calculated," from the facts in *First American*, where "the actual damages arising from a

specific defendant's actions may be difficult to assess." *Id.*  Plaintiff, however, has not suggested

that the actual damages caused by the District in this case may be difficult to assess, and the

Court has no reason to doubt that damages could be easily calculated based on the payments

Plaintiff made to the Reimbursable Detail.

    Even if this Court were inclined to extend *First American*'s holding that RICO's treble

damages provision is not primarily punitive to the facts at hand, Plaintiff has entirely failed to

respond to Defendants' argument that a municipal corporation cannot, as a matter of law, form

the intent necessary to commit the predicate criminal offense that gives rise to civil RICO

liability.  *See* Defs.' Mot. Strike at 11 (citing *Pedrina*, 97 F.3d at 1300; *Brewer v. Vill. of Old*

*Field*, 311 F. Supp. 2d 390, 398 (E.D.N.Y. 2004)); *see also Nu-Life Constr. Corp. v. Bd. of Educ.*

*of N.Y.*, 779 F. Supp. 248, 252 (E.D.N.Y. 1991) (holding that governmental entities "are not

capable of forming the criminal intent necessary for the commission of the predicate violations

of the Hobbs Act, and therefore cannot be held liable under 18 U.S.C. § 1964(c)").  In the

absence of any opposition to Defendants' assertion that the District is incapable as a matter of

law of forming the necessary criminal intent to violate the Hobbs Act and thus subject itself it

RICO liability, the Court deems the matter conceded.  *See* Local Civil Rule 7(b); *Hopkins v.*

*Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a

plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised

by the defendant, a court may treat those arguments that the plaintiff failed to address as

conceded.").  Accordingly, the Court finds that to permit amendment of Plaintiff's complaint to

include RICO claims against the Board members in their official capacities would be futile.

### 3. Takings Clause Claim

Similarly, even if Plaintiff had sought leave to amend its Fifth Amendment Takings

Clause claim, the Court would have denied the amendment as futile.  Plaintiff's Takings Clause

claim, Count V, is premised on the Board's order requiring Plaintiff to hire reimbursable details,

thereby requiring Plaintiff to pay MPD thousands of dollars for policing services.  Am. Compl.

§§ 125–130.  This Court previously dismissed Count V for failure to state a claim, explaining

that "a mere payment of money, without more, is not a taking within the meaning of the Takings

Clause."  *BEG Investments*, 34 F. Supp. 3d at 87.  Plaintiff's amended complaint adds a single

assertion to those allegations previously found inadequate by the Court: "Defendants have forced

the Plaintiff to pay extortionate monetary payments to receive business permits without any

legitimate governmental purpose."  Am. Compl. ¶ 129.  Defendants, in response, have argued

that *res judicata* bars the claim, and they have incorporated by reference their prior arguments

for dismissing Count V for failure to state a claim under the Fifth Amendment.  *See* Defs.' Mot.

Strike at 8–9, 9 n.5.

Plaintiff's opposition, however, offers no counter-argument on the subject; indeed, Plaintiff's opposition is devoid of any reference whatsoever to the Fifth Amendment generally or Plaintiff's Takings Clause claim specifically.  In light of Plaintiff's failure to respond to Defendants' arguments in favor of striking or dismissing the Takings Clause claim as futile, the Court shall treat the matter as conceded.  *See* Local Civil Rule 7(b); *Jordan v. District of Columbia*, 949 F. Supp. 2d 83, 91 (D.D.C. 2013) (dismissing two claims because "[b]y failing to respond in their opposition, the plaintiffs have conceded [the defendant's] argument"); *Hopkins*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

### C.  Failure to Seek Leave to Amend: Title VI Claim

New to Plaintiff's amended complaint is Count IV, a claim that alleges a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Although Plaintiff did not seek leave to amend its complaint to include a claim of race discrimination under Title VI, like the Equal Protection Clause, Title VI prohibits only intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001); *see also Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) (holding that "discrimination that violates the Equal Protection Clause of the Fourteenth Amendment committed by an institution that accepts federal funds also constitutes a violation of Title VI"); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment.").  And Plaintiff's allegations in support of its Equal Protection Clause claims, which the Court did grant Plaintiff leave to amend, are virtually identical to the allegations offered in support of Plaintiff's Title VI claim.  *Compare* Am. Compl. ¶ 114 (alleging

Equal Protection Clause violation on the basis of the imposition of reimbursable details "to unlawfully inhibit the free assembly of minorities . . . and to unlawfully inhibit the performance of certain kinds of music") *with id.* ¶ 119 (alleging Title VI violation on the basis of the imposition of reimbursable details "for the purpose of inhibiting the free association of young black African Americans and to inhibit the playing of 'urban' styles of music").

Accordingly, in the interests of justice and in the absence of any demonstrated prejudice to Defendants, the Court will treat the addition of Plaintiff's Title IV claim as an amendment of Plaintiff's Equal Protection Clause claims permitted by this Court's Order. [8] The Court will not strike Count IV, Plaintiff's Title VI claim, for failure to comply with Rule 15, and will proceed to consider Defendants' alternative argument that even those claims in Plaintiff's amended complaint that are properly before the Court must be dismissed for failure to state a claim under Rule 12(b)(6).

### D.  Failure to State a Claim: Equal Protection Clause & Title VI Claims

Defendants next assert that Counts III, IV, and VII, which assert violations of the Equal Protection Clause,[9] Title VI, and 42 U.S.C. § 1985, respectively, must be dismissed for failure to state a claim.  Count III alleges that Defendants' imposition of the reimbursable detail condition on Plaintiff's establishment, "but not all other similarly situated businesses," deprived Plaintiff of the equal protection of the laws.  Plaintiff alleges that Defendants imposed the condition "for a

---

[8] Defendants have also failed to assert any prejudice resulting from Plaintiff's decision at this pre-discovery stage of litigation to amend its Equal Protection Clause and First Amendment claims to include claims against Defendants in their official capacities.  The Court's grant of leave to amend those claims did not restrict Plaintiff to raising solely individual capacity claims. *See* Order at 1.  Accordingly, and in the absence of any assertion of prejudice, the Court denies Defendants' motion to strike Plaintiff's Equal Protection Clause and First Amendment claims against Defendants in their official capacities.

[9] The Fifth Amendment's due process clause is applicable to the District of Columbia and "has been construed to incorporate a guarantee of equal protection of the law."  *United States v. Jackson*, 553 F.2d 109, 119 n.19 (D.C. Cir. 1976).

discriminatory purpose," "to unlawfully inhibit the free assembly of minorities and certain economic or social classes, and to unlawfully inhibit the performance of certain kinds of music." Am. Compl. ¶¶ 114, 116.  Count IV similarly alleges that Defendants' imposition of the reimbursable detail condition "targeted establishments such as the Plaintiff's . . . for the purpose of inhibiting the free association of young black African Americans and to inhibit the playing of 'urban' styles of music such as R&B, Hip-Hop and Go-Go music," in violation of Title VI of the Civil Rights Act of 1964. *Id.* ¶¶ 9, 119.  And Count VII, which is unchanged from Plaintiff's first complaint, alleges that Defendants conspired to deprive Plaintiff "of the equal protection of the laws." *Id.* ¶ 138.  Pertinent to all three claims are Plaintiff's new factual allegations that BEG's establishment is patronized "almost entirely" by "black African Americans between the ages of 25-40," *id.* ¶ 29, and that the music it plays "consists mostly of R&B, Hip-Hop and Go-Go music" *id.* ¶ 30.  Plaintiff also alleges that four other establishments that played similar music and had primarily African-American patrons were also subject to reimbursable detail conditions, *see id.* ¶¶ 40–95, and that a fifth, although not required to hire a reimbursable detail, was required to provide the names of two Go-Go bands' members to the Board before its indefinite suspension could be lifted, *id.* ¶¶ 96–103.

Defendants contend that these allegations are not enough to make out a plausible claim for relief under the Equal Protection Clause, Title VI, or § 1985.  Specifically, Defendants point out that aside from a conclusory assertion that "not all other similarly situated businesses" were subject to a reimbursable detail condition, Plaintiff has not alleged any facts to suggest that any establishment similarly situated to Plaintiff's, but for some protected category, was treated differently by the Board.  Defs.' Mot. Strike at 13–16.  Without such allegations, Defendants contend, Plaintiff has failed to state a plausible discrimination claim.

Plaintiff counters that it has adequately alleged facts showing "palpable discriminatory animus," citing four paragraphs of its complaint that describe the Board's regulation of an establishment owned by a non-party.  Pl.'s Opp'n Mot. Strike at 14–15.  In those paragraphs, Plaintiff alleges that the Board voted to continue the suspension of an establishment's license until the establishment "provided to them the names of band members of two Go-Go bands," that the Board required the establishment "to submit a list of its entertainment events . . . on a monthly basis," that the establishment "submitted a proffer letter" to the Board stating that it would not employ the two Go-Go bands at issue, and that the Board accepted the proffer and permitted the reestablishment to reopen on that basis.  Am. Compl. ¶¶ 101–04.  Accepting these allegations as true, one could infer that the Board harbors animus towards certain Go-Go bands, and that when restricting the abilities of those bands to perform at a particular establishment, it may have violated the rights of individuals who are not parties to this litigation.  But such inferences are insufficient to support Plaintiff's claims that the Board violated the rights of Plaintiff and Plaintiff's patrons by imposing reimbursable details in a discriminatory manner on the basis of race and musical genre.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained that to survive a motion to dismiss, a complaint must offer "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted) (holding that allegation that the FBI arrested and detained thousands of Arab Muslim men after September 11 did not plausibly establish discrimination on account of race, religion, or national origin where it was just as likely that the men were detained for non-discriminatory, national security purposes).  In accordance with

*Iqbal*, this Court warned Plaintiff in its prior Memorandum Opinion that although Plaintiff had leave to amend its Equal Protection Clause claims, Plaintiff was advised that "generalized claims of discrimination cannot survive a motion to dismiss if not supported by alleged facts." *BEG Investments*, 34 F. Supp. 3d at 85 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This warning is no less applicable to Plaintiff's Title VI claims, which also requires factual allegations showing intentional discrimination. *See Alexander*, 532 U.S. at 281 ("Title VI itself directly reaches only instances of intentional discrimination." (internal quotation marks omitted)).

A careful review of Plaintiff's amended complaint shows that it lacks adequate factual allegations to make its conclusory assertions of discrimination plausible rather than merely possible. The Court accepts as true Plaintiff's non-conclusory assertions that five establishments in the District of Columbia, including Plaintiff's, that play primarily R&B, Hip-Hop, and Go-Go Music and that are patronized primarily by African-Americans, have been required to hire reimbursable details. Missing from Plaintiff's complaint, however, are any factual allegations supporting its conclusory allegations of discriminatory intent and differential treatment. For example, Plaintiff does not allege that Defendants have placed any genre- or band-related restrictions on Plaintiff, or even that the Board was aware that Plaintiff played R&B, Go-Go, and Hip-Hop music. And the only mention of musical genres in the Board's Order imposing the reimbursable detail condition on Plaintiff is a factual summary of the testimony of the establishment's manager, who said that "[o]ccasionally, the establishment . . . has jazz groups perform on Sundays." *See* Board Order 2011-289 at 4, Defs.' Ex. A. Additionally, Plaintiff has failed to allege that the Board members who imposed the reimbursable condition, professedly in the interest of public safety following reports of multiple violent incidents at Plaintiff's establishment, were aware that the majority of Plaintiff's patrons were African American.

The amended complaint is also devoid of any factual allegations suggesting that similar establishments that were patronized primarily by other races or that played primarily other genres of music were not subject to reimbursable detail conditions.  Plaintiff's conclusory assertion that the Board imposed reimbursable detail conditions on "Plaintiff but not all similarly situated businesses," Am. Compl. ¶ 115, is no substitute for factual allegations.  *See Mpras v. District of Columbia*, No. 2014-CV-00220, 2014 WL 6603303, at *5 (D.D.C. Nov. 21, 2014) (rejecting as conclusory the complaint's allegation that the plaintiff was treated differently from those "similarly situated" where complaint did not allege any supporting facts "about who these other persons are or how they were similarly situated"); *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 159 (D.D.C. 2014) (holding that plaintiff's failure "to identify any neighborhood, much less one that is a similarly situated . . . that has been treated more favorably . . . is insufficient to demonstrate a racially discriminatory purpose behind Defendant's actions and, therefore, insufficient to 'plausibly give rise to an entitlement to relief' under the Equal Protection Clause").

Plaintiff does allege that its "attorney's research has indicated no kind of imposition of police details upon establishments not catering to young black African Americans," but it does so only in its opposition brief.  Pl.'s Opp'n Mot. Strike at 14.  As this Court previously informed Plaintiff, however, "the Court cannot consider facts alleged in the briefing when ruling on a Motion to Dismiss.  'It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *BEG Investments*, 34 F. Supp. 3d. at 85 (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)).

Plaintiff also protests that it is not its burden at any point in this litigation to "prove a negative," and that it should be the Defendants' burden to come forward with evidence that

establishments patronized by other races were treated similarly. *See* Pl.'s Opp'n. Mot. Strike at

14. Plaintiff then cites a series of cases suggesting that a party ought not be required to prove a

negative, and that the preferred approach is to put "the burden of coming forward with evidence

on the party with superior access to the affirmative information." *Sissoko v. Rocha*, 440 F.3d

1145, 1162 (9th Cir. 2006) *opinion withdrawn and superseded on denial of reh'g*, 509 F.3d 947

(9th Cir. 2007).

　　　As Defendants point out, however, Board orders – including those imposing reimbursable

detail conditions on other establishment – are publically available, and indeed, Plaintiff cites a

number of them in its amended complaint. More to the point, burdens of proof and production

are irrelevant to the issue at hand: Plaintiff's pleading obligations.[10] Plaintiff need not come

forward with any evidence at this stage of the proceedings, but its failure to allege any facts

supporting its assertion of discriminatory intent or demonstrating that any similarly situated

establishments were treated differently makes the claim of discriminatory treatment less than

plausible.[11] *See Jones v. Nat'l Council on Disability*, No. CV 13-1691, 2014 WL 4359167, at *6

(D.D.C. Sept. 4, 2014) ("To advance an equal protection claim, a plaintiff must assert *facts* that

---

[10] Plaintiff's discussion of summary judgment standards, including the *McDonnell Douglas* burden-shifting framework and establishment of a *prima facie* case, *see* Pl.'s Opp'n Mot. Strike at 12–17, is also not pertinent at this stage of the litigation.

[11] *See Smith v. Henderson*, 982 F. Supp. 2d 32, 49–50 (D.D.C. 2013) (explaining that to show intentional discrimination as required by the Equal Protection Clause and Title VI where a plaintiff does not allege that a law or regulation explicitly differentiates on the basis of race, the plaintiff must allege facts to show either "that a facially neutral law or policy has been applied differently on the basis of race" or that the facially neutral policy "is, in fact, motivated by discriminatory intent and has a racially discriminatory impact"); *see also Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977) (explaining that discriminatory intent can be established through a pattern of racially-discriminatory impact "unexplainable on grounds other than race," departures from normal procedures, "contemporary statements by members of the decisionmaking body," or a suspicious "sequence of events leading up to the challenged decision," such as when a property that had always been zoned to allow housing was only re-zoned when the town learned of plans to make the housing integrated).

support the allegation that the government intentionally treated him differently from others who

were similarly situated . . . ." (emphasis added)), *aff'd*, No. 14-5244, 2015 WL 653308 (D.C. Cir.

Feb. 5, 2015).  As a consequence, Plaintiff has failed to plead sufficient facts to state a claim of

discrimination under the Equal Protection Clause or Title VI, and the Court will grant

Defendants' motion to dismiss Counts III, IV, and VII.[12]

### E.  Failure to State a Claim: First Amendment Free Speech Claim

The last remaining claim in Plaintiff's amended complaint is Count VI, which alleges that

Defendants' imposition of the reimbursable detail condition unconstitutionally burdened

Plaintiff's First Amendment right to play certain kinds of music at its establishment.  Am.

Compl. ¶¶ 131–36.  After noting that "[r]egulations enacted for the purpose of restraining speech

on the basis of content presumptively violate the First Amendment," Plaintiff alleges that

Defendants exercised their "unlimited discretion to impose reimbursable details upon the

Plaintiff" in a manner that "imposes burdens upon its establishment for playing certain types of

music."  *Id.* ¶¶ 132, 136; *see also* Pl.'s Opp'n Mot. Strike at 20 (arguing that the "Board is

impermissibly driving certain ideas or viewpoints from nightclubs in the District").  Plaintiff

adds that its "establishment plays music specifically for the enjoyment of young black African

Americans," Am. Compl. ¶ 135, and that its music consists "mostly of R&B, Hip-Hop and Go-

Go music," *id.* ¶ 30.

In their motion to dismiss, Defendants argue that Plaintiff's First Amendment claim is, in

fact, a selective enforcement claim cognizable under the Equal Protection Clause and not the

First Amendment.  Defs.' Mot. Strike at 12–13.  Defendants note that although Plaintiff's

---

[12] Because the Court agrees with Defendants that Plaintiff has failed to allege sufficient facts to state a discrimination claim, it will not address Defendants' additional arguments for dismissal of the Title VI claim: that individuals are not liable under Title VI and that the Board did not receive federal funds.

complaint recites legal provisions applicable to the First amendment and "content-based regulations," Plaintiff does not actually allege that the Board's order imposing the reimbursable detail was itself content-based. *See id.* at 12. Instead, Plaintiff alleges that the Board has exercised its regulatory power unconstitutionally by imposing reimbursable detail conditions on certain establishments in an effort to discourage them from playing certain kinds of music. Because Plaintiff's claim is a selective enforcement claim, Defendants contend, it must be analyzed pursuant to Equal Protection Clause jurisprudence, and because Plaintiff has failed to allege that it was singled out from similarly situated establishments, the "First Amendment" claim must be dismissed. *Id.* at 12–16. Alternatively, Defendants argue that to the extent Plaintiff truly did intend to state a First Amendment claim, it has failed to do so because neither the statute that authorized the Board to act nor the condition that the Board imposed regulates or references content, and the stated purpose for asserting the condition was the content-neutral governmental interest in curbing violence and noise. Defs.' Mot. Strike at 12 n.8.

The precise nature of Plaintiff's First Amendment claim is not immediately obvious from the amended complaint, which first cites legal principles applicable to content-based regulations that must be analyzed with strict scrutiny, Am. Compl. ¶¶ 132–33, and then complains of the Board's exercise of its "unlimited discretion" to burden Plaintiff's establishment "for playing certain types of music," Am. Compl. ¶ 136. Plaintiff's opposition brief, which contains multiple pages of case citations, summaries, and quotations – the applicability of which Plaintiff does not discuss – offers only three sentences of argument that shed little light on the nature of Plaintiff's claim. *See, e.g.*, Pl.'s Opp'n at 17 (acknowledging Defendants' argument about its "intermingled constitutional claim," but responding only that such claims "are not without precedent," without addressing whether analysis of the claim as one for selective enforcement under the Equal

Protection Clause is appropriate).  In an abundance of caution, the Court will consider first whether Plaintiff has adequately alleged the imposition of a content-based restriction that violates the First Amendment, and then whether Plaintiff has alleged sufficient facts to make out a plausible claim of selective enforcement.

To the extent that Plaintiff's amended complaint could be read as suggesting that the reimbursable detail condition on Plaintiff's liquor license is an unconstitutional "content-based regulation," Plaintiff's claim fails.  "Content-based laws are . . . 'presumptively invalid, and the government bears the burden to rebut that presumption.'"  *Act Now to Stop War & End Racism Coal. v. District of Columbia*, 798 F. Supp. 2d 134, 145–46 (quoting *United States v. Playboy Entm't Grp. Inc.*, 529 U.S. 803, 817 (2000)).  But Plaintiff does not allege – and the condition itself does not reflect – that the Board imposed any restrictions whatsoever on the content or genre of music that Plaintiff may play while maintaining its liquor license.  According to the Board's order, Plaintiff was required to hire a reimbursable detail only if it elected to provide certain forms of live entertainment – a DJ or live music – regardless of whether the music played was go-go or gospel.  *See* Board Order 2011-289 at 5–7, Defs.' Ex. A.  Furthermore, the Board's explanation for its imposition of the condition was content-neutral.  *See id.* (expressly stating that the Board was imposing the reimbursable detail condition to alleviate "negative impacts on the neighborhood" and in response to "concerns regarding the establishment's effect on peace, order, and quiet" after "a number of violent incidents . . . occurred at the establishment").

There is thus no question that the reimbursable detail condition is facially content-neutral, impacting indirectly only the "time, place or manner of expression," purportedly for the purpose of ameliorating the establishment's negative effects on the surrounding neighborhood.  *Cf. Ward v. Rock Against Racism*, 491 U.S. 781, 792 (1989) (holding that where a sound-amplification

31

guideline was justified by "the city's desire to control noise levels[,] . . . to retain the character of the [area], and to avoid undue intrusion into residential areas," the justification had "nothing to do with content and . . . satisfie[d] the requirement that time, place, or manner regulations be content neutral" (internal quotation marks and citation omitted)).  The Board order imposing the condition proffers substantial, content-neutral justifications for imposing the reimbursable detail condition on Plaintiff after reports of violent incidents and intoxicated patrons disturbing the neighborhood.  *See* Board Order 2011-289 at 5–7, Defs.' Ex. A.  And Plaintiff has not alleged that the condition has limited its alternative avenues of expression or communication, let alone that it has done so unreasonably.  *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986) ("'[C]ontent-neutral' time, place, and manner regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.").

Although Plaintiff appears to argue that the content-neutral condition violated the First Amendment because it is the product of the illicit motivations of the Board's members, the Supreme Court has long-since foreclosed such intent-based arguments.  Even if the government intended "to restrict respondents' exercise of First Amendment rights," that alone is an insufficient basis to find that a content-neutral ordinance violates the First Amendment.  *See id.* at 47–48 (refusing to consider allegations of illicit intent when the plain terms of an ordinance express a content-neutral intent); *see also Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." (internal quotation marks omitted)). [13]

---

[13] In the interest of completeness, the Court notes that to the extent that Plaintiff's complaint could be viewed as encompassing a facial challenge to the D.C. Code provision providing the Board with allegedly "unlimited discretion" to impose license conditions,

Nevertheless, this Court recognized in its prior Memorandum Opinion that even a content-neutral regulation like a reimbursable detail requirement could be selectively applied in a content-discriminatory way, and it gave Plaintiff leave to amend its First Amendment claim to allege facts supporting a theory of selective enforcement. *See BEG Investments*, 34 F. Supp. 3d. at 86 ("In essence, the Plaintiff attacks the unwritten discriminatory policy, only manifested by the Board's application of its statutory authority. *See, e.g.*, *Tipton v. Univ. of Hawaii*, 15 F.3d 922, 927 (9th Cir. 1994)).

The circuit courts have expressed a range of opinions regarding whether a selective enforcement claim is properly considered a First Amendment or Equal Protection Clause claim. *Compare McGuire v. Reilly*, 386 F.3d 45, 61 (1st Cir. 2004) (treating as a First Amendment as-applied challenge a claim "based on the idea that the law itself is neutral and constitutional in all fact situations, but that it has been enforced selectively in a viewpoint discriminatory way") *with Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (explaining that the court "generally classified such challenges as selective enforcement equal protection claims"). In *Sanjour v. EPA*, 56 F.3d 85 (D.C. Cir. 1995), this Circuit held that selective enforcement claims are

Plaintiff's opposition to Defendants' motion to dismiss advances no such theory. Moreover, it is doubtful that such a theory could be maintained in this case where the Board's consideration of Plaintiff's license renewal was subject to consideration of those factors set forth in D.C. Code § 25-313 and 23 DCMR § 400.1(a), in addition to a wealth of other code provisions and administrative regulations, and where the Board's Order was subject to reconsideration and direct appeal to the District of Columbia Court of Appeals, D.C. Code § 2-510. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323–24 (2002) (rejecting challenge based on licensing official's allegedly unduly broad discretion to grant or deny a permit where regulations provided "adequate standards to guide the official's decision" and it was "subject to effective judicial review"); *see also The Tool Box v. Ogden City Corp.*, 355 F.3d 1236, 1242–43 (10th Cir. 2004) (en banc) (holding that the building permit restrictions at issue were "exempt from a First Amendment challenge that they permitted unbridled discretion," because they were aimed at "all features of a business" rather than conduct commonly associated with expression, and they did not "'permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken'" (quoting *Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S.750, 760–01 (1988)).

properly analyzed as Equal Protection Clause claims, and that even if a plaintiff alleges that selective enforcement was intended to prevent him from exercising his First Amendment rights, "it does not transform an equal protection 'selective enforcement' claim into a First Amendment 'as applied' challenge." *Id.* at 92 n.9 ("The critical inquiry in such cases is thus not whether legislation is constitutional 'as applied' to a particular set of facts, but rather whether the government may constitutionally 'apply' the same rule to some individuals but not to others similarly situated.").

As a consequence, Plaintiff must allege sufficient factual matter to show that the Board's purportedly content-discriminatory exercise of its authority to impose license conditions "singled [Plaintiff] out from others similarly situated" or that the application of the condition to Plaintiff was improperly motivated by the Board's desire to discriminate against the viewpoint conveyed by the music played in Plaintiff's nightclub. *See id.* (quoting *Juluke v. Hodel*, 811 F.2d 1553, 1561 (D.C.Cir.1987)); *see also Hoye*, 653 F.3d at 855 ("Under both the First Circuit's 'as-applied' approach and our standard 'selective enforcement' approach, a plaintiff must show that a municipality's content-discriminatory enforcement of an ordinance is the result of an intentional policy or practice.").  But as described above in Part IV.D of this Opinion, Plaintiff has not provided factual allegations to suggest that the Board treated similarly situated establishments – i.e., establishments like Plaintiff's but for the fact that they did not play primarily Hip-Hop, R&B, and Go-Go music – any differently.  Indeed, the only establishment that Plaintiff does not allege was subject to a reimbursable detail condition played the very same types of music as did Plaintiff for patrons of the same race.  *See* Am. Compl. ¶ 98.

And although Plaintiff contends that the condition was imposed to discriminate against its playing of primarily Hip-Hop, R&B, and Go-Go music for the enjoyment of African-Americans,

Plaintiff has failed to allege any facts suggesting that the Board knew that Plaintiff favored those types of music when it imposed the condition, let alone any facts supporting a plausible claim of discriminatory intent. *See* Board Order 2011-289 at 4, Defs.' Ex. A (finding that "[o]ccasionally, the establishment . . . has jazz groups perform on Sundays," but not identifying any other genres of music played at Plaintiff's establishment). In short, Plaintiff has not alleged any facts to support the conclusory allegation that the Board imposed the reimbursable detail condition on Plaintiff with the intent to inhibit it from playing certain types of music. As discussed in Part IV.D of this Opinion, the failure to allege such facts is fatal to Plaintiff's discriminatory enforcement claim.

Having found no theory under which Plaintiff's First Amendment claim could be viewed as stating a plausible claim for relief, the Court grants Defendants' motion to dismiss Count VI.[14]

### F. Plaintiff's Motion for Leave to Supplement its Complaint

The Court next addresses Plaintiff's motion for leave to file a supplemental complaint setting forth additional claims based on "transaction[s], occurrence[s], or event[s] that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff's supplemental complaint first alleges that in response to its filing of this suit – an activity protected by the First Amendment right to petition the government for a redress of grievances – Defendants retaliated by fabricating a noise complaint against Plaintiff and by twice closing its establishment "to intimidate and punish the Plaintiff, and to interfere with the Plaintiff's prosecution of its claims before this Court." Suppl. Compl. ¶¶ 58–79. These acts, Plaintiff

---

[14] Having determined that each of the claims in Plaintiff's amended complaint that are properly before the Court fail to state a claim, the Court need not consider Defendants' additional argument that Plaintiff's official capacity claims fail as a matter of law because Plaintiff failed to allege a "policy or custom" of the District played a part in the Board members' alleged violations of federal law. Defs.' Mot. Strike at 9–10 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

argues, give rise to three First Amendment retaliation claims.  Additionally, Plaintiff's

supplemental complaint includes a claim of conspiracy to deprive Plaintiff of the equal

protection of the laws in violation of 42 U.S.C. § 1985, and two claims of defamation in

violation of District of Columbia law.

Defendants oppose Plaintiff's motion to supplement, arguing that granting Plaintiff leave

to supplement its complaint with the above-described claims would be futile, because the claims

would not survive a motion to dismiss under Rule 12(b)(6).  Defendants offer an array of

arguments in favor of a finding of futility, including that: (1) all of the Board members are

entitled to quasi-judicial immunity for their actions at show cause hearings; (2) quasi-

prosecutorial immunity bars a § 1983 claim against Ms. Schmidt in her individual capacity for

her actions taken while representing the government before the Board; (3) Plaintiff's First

Amendment retaliation claim against Ms. Schmidt for fabricating and prosecuting a false noise

complaint is futile because the complaint was investigated four months before this suit was filed;

(4) pursuant to the *Younger* abstention doctrine, the Court cannot exercise jurisdiction over

Plaintiff's First Amendment claim relating to the closure of its establishment on June 6, 2014,

because those Board proceedings are ongoing; (5) Plaintiff has failed to allege sufficient facts to

state a First Amendment retaliation claim for the closure of its establishment on May 14, 2014;

(6) Sergeant Pope is entitled to absolute immunity from Plaintiff's defamation claims; (7)

Plaintiff failed to state a claim for defamation because the alleged statements were not inherently

defamatory and Plaintiff failed to make particularized allegations of harm; and (8) the § 1985

claim contains only a formulaic recitation of the elements of the cause of action and fails to state

a plausible claim for relief.  *See generally* Defs.' Opp'n Mot. Suppl., ECF No. 19.

In reply to Defendants' twenty-page brief arguing that all of Plaintiff's supplemental claims are futile and should not be permitted, Plaintiff makes only two responsive arguments: (1) futility analysis is not appropriate when considering a supplemental complaint, and (2) Defendants' factual denials of the allegations supporting Plaintiff's First Amendment retaliation claims should not be considered.  Pl.'s Reply at 3–4, ECF No. 20.  Plaintiff makes no response whatsoever to Defendants' arguments pertaining to immunity, *Younger* abstention, failure to state a defamation claim, or failure to state a § 1985 claim.  Instead, Plaintiff has pinned its hopes on its belief that "Defendants' futility analysis has no place in the supplementation of a complaint."  *Id.* at 3.  Plaintiff is mistaken.

The case law of this Circuit confirms that futility is an appropriate basis for denying a motion for leave to supplement a complaint.  *See, e.g., Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (affirming district court's decision to deny leave to file a supplemental complaint because "[t]he proposed amendments would have been futile"); *Nat'l ATM Council, Inc. v. Visa Inc.*, 7 F. Supp. 3d 51, 57 (D.D.C. 2013) ("[A] court does not abuse its discretion if it denies leave to amend or supplement based on futility."); *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008) ("The decision whether to grant leave to amend or supplement a complaint is within the discretion of the district court, but leave should be freely given unless there is a good reason, such as futility, to the contrary." (internal quotation marks omitted)).

Plaintiff's argument to the contrary is devoid of merit and relies entirely on two out-of-circuit cases, both of which flatly contradict Plaintiff's position.  In *Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir. 1995), the Second Circuit explicitly recognized that "futility" was a basis for denying a motion to supplement a pleading, but the court found that leave to supplement would

not have been futile in that case.  *Id.* at 65–66.  Similarly, *Saratoga Potato Chips Co. v. Classic Foods, Inc.*, No. 1:12-CV-452, 2014 WL 2930495 (N.D. Ind. June 27, 2014), does not, as Plaintiff incorrectly asserts, "reject[] futility analysis in a supplemental complaint."  Pl.'s Reply at 3.  Rather, the district court in that case recognized futility of amendment as a basis for denying leave to supplement, conducted a futility analysis, and determined that with the exception of two claims, granting leave to supplement would not be futile.  *Saratoga Potato Chips Co.*, 2014 WL 2930495, at *2–6.  Accordingly, the Court will proceed to consider Defendants' arguments that Plaintiff's motion to supplement its complaint should be denied on the basis of futility.

### 1.  Count VIII: First Amendment Retaliation Claim against Ms. Schmidt

The first claim in Plaintiff's supplemental complaint is brought against Ms. Schmidt, an OAG attorney, in her individual capacity.  Plaintiff alleges that Ms. Schmidt "fabricated a noise complaint and procured false testimony against the Plaintiff" at a hearing before the Board on January 15, 2014, in retaliation for Plaintiff's filing of this lawsuit and in violation of Plaintiff's First Amendment rights.  Suppl. Compl. ¶¶ 6–24, 58–63.  Plaintiff alleges that it did not receive notice of a noise complaint said to have occurred on July 26, 2012, and described in an ABRA investigative report finalized on August 28, 2012, until March 13, 2013 – approximately one month after Plaintiff filed this suit.  *Id.* ¶¶ 6–9.  Additionally, Plaintiff notes that although the investigative report did not state the time that the alleged violation occurred on July 26, the notice that Plaintiff received stated that it occurred at approximately 2:15 AM, and Ms. Schmidt later stated at hearing that 2:15 was a "misprint," and that the alleged complaint occurred between 11:30 PM and midnight.  *Id.* ¶¶ 8–12.  Based on the delayed notice and inconsistent

allegations regarding the time of the noise complaint, Plaintiff believes that July 26 complaint was fabricated by Ms. Schmidt and persons unknown after Plaintiff filed this suit. *See id.* ¶ 59.

Plaintiff further states that at a show cause hearing before the Board on January 15, 2014, ABRA investigator Earl Jones, who claims to have investigated the complaint and who signed the August 28 investigative report, testified under oath that he responded to the noise complaint on July 26, 2012, and that he interviewed a complainant who said that she could hear music from Plaintiff's establishment in her home. *See id.* ¶¶ 13–14; Board Hearing Transcript, Jan. 15, 2014, at 43–48, Defs.' Ex. E, ECF No. 19-2; ABRA Investigative Report at 184–88, Defs.' Ex. N, ECF No. 19-2. Investigator Jones produced photographs that he took of the complainant's home and Plaintiff's establishment, but he was unable to recall the complainant's name or her specific address at the show cause hearing, and he did not produce any contemporaneous notes related to his investigation. Suppl. Compl. ¶¶ 15–19. Ultimately, Ms. Schmidt failed to offer sufficient evidence to support the charge that she was prosecuting, and the Board dismissed the noise violation charge for insufficient evidence. *Id.* ¶¶ 20–24; Board Order 2014-087 at 29–30m 33, Defs.' Ex. D, ECF No.19-2. From these facts, Plaintiff concludes that Ms. Schmidt procured and used "knowingly fabricated" evidence and testimony against Plaintiff at the show cause hearing in January 2014 in retaliation for Plaintiff's filing of this lawsuit in February 2013. Suppl. Compl. ¶¶ 59–62.

Defendants contend that the First Amendment retaliation claim against Ms. Schmidt is futile as it could not survive a Rule 12(b)(6) motion for failure to state a claim. As for the assertion that Ms. Schmidt fabricated the allegations in the August 2012 ABRA investigative report in retaliation for Plaintiff's filing of this suit, Defendants argue that the report could not be retaliatory because it was finalized several months before Plaintiff initiated this suit in February

2013.  Defs.' Opp'n at 10–11.  As to the allegation that Ms. Schmidt procured false testimony

and used fabricated evidence against Plaintiff at the January 2014 show cause hearing,

Defendants argue that Ms. Schmidt is entitled to quasi-prosecutorial immunity, which "provides

an absolute bar to civil liability against her in her personal capacity for any conduct—including

suborning perjury—done in the course of prosecuting charges against Plaintiff."  *Id.* at 11 (citing

*Imbler v. Pachtman*, 424 U.S 409 (1976)).

   In *Imbler*, the Supreme Court held that a government prosecutor has absolute immunity

from suit under 42 U.S.C. § 1983 for acts taken in her role as an advocate for the State.  424 U.S.

at 424–31; *see also Butz v. Economou*, 438 U.S. 478, 515 (1978) (observing that "agency

officials performing certain functions analogous to those of a prosecutor should be able to claim

absolute immunity with respect to such acts"); *Gray v. Poole*, 243 F.3d 572, 577 (D.C. Cir.

2001) (holding that government attorneys have absolute immunity for their conduct in initiating

and prosecuting civil child neglect cases).  As Defendants point out, absolute immunity extends

to the decision to prosecute, *Moore v. United States*, 213 F.3d 705, 709 (D.C. Cir. 2000), as well

as to a prosecutor's willful use of perjured testimony in proceedings against a defendant, *Imbler*,

424 U.S. at 431 n.34.

   Plaintiff makes no response to Defendants' argument that Ms. Schmidt is entitled to

absolute immunity for her activities in presenting the District's case before the Board at the

January 2014 show cause hearing.  In the absence of any opposition or response to Defendants'

assertion of immunity, the Court deems the matter of immunity conceded.  *See Cannon v. Wells

Fargo Bank, N.A.*, 952 F. Supp. 2d 1, 11 (D.D.C. 2013) (holding that where a plaintiff failed to

respond to the defendants' futility arguments, the Court would treat the arguments as conceded

and deny leave to amend as futile); *Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-

CV-6340, 2013 WL 1209098, at *12 (E.D.N.Y. Mar. 22, 2013) (holding that where plaintiffs sought leave to plead a new claim and defendants argued that it would be futile, plaintiff's failure to respond to defendants' arguments in their reply brief caused the court to deem plaintiff's request abandoned); *see also Hopkins*, 284 F. Supp. 2d at 25 (holding that when a plaintiff opposes a defendants' dispositive motion but addresses only certain arguments, "a court may treat those arguments that the plaintiff failed to address as conceded").

For the reasons stated by Defendants, the Court finds that Ms. Schmidt is immune from suit for her initiation and presentation of the case against Plaintiff at the January 2015 show cause hearing before the Board.  Accordingly, to the extent that Plaintiff's First Amendment claim against Ms. Schmidt is premised on the acts she took and the evidence she presented while prosecuting the noise violation against Plaintiff at the show cause hearing, the claim is futile and leave to supplement is denied.

Prosecutorial immunity does not extend, however, to Ms. Schmidt's actions pertaining to the creation or investigation of a noise complaint prior to charging and prosecuting the alleged violation.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (holding that absolute immunity does not apply "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer").  Thus, to the extent that Plaintiff's retaliation claim is premised on Ms. Schmidt's alleged fabrication of a noise complaint prior to charging Plaintiff with a violation, Ms. Schmidt is not immune from suit.  *See id.* at 275–76 (holding that prosecutor who allegedly fabricated evidence during the preliminary investigation of a crime was only entitled to qualified immunity, not absolute immunity).  The Court therefore proceeds to the question of whether Plaintiff has adequately alleged a First Amendment retaliation claim against Ms. Schmidt for her alleged fabrication of the noise complaint against Plaintiff.

Defendants maintain that Plaintiff's claim must fail because the investigative report pertaining to the noise complaint against Plaintiff was prepared and finalized months before Plaintiff filed this suit, meaning that it could not possibly support a claim of retaliation.  Defs.' Opp'n Mot. Suppl. at 10–11.  In response, Plaintiff asserts that it has alleged: (1) "that it was engaged in constitutionally protected litigation against these Defendants," (2) " that since the time of the filing of the initial Complaint, the Defendants and other persons have severely injured the Plaintiff in a manner that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) "that the Defendants' action was substantially motivated as a response to the Plaintiff's exercise of constitutionally protected conduct."[15]  Pl.'s Reply at 4. According to Plaintiff, "[f]actual denials of these allegations have no place in the Court's consideration of the Plaintiff's Supplemental Complaint."  *Id.*

To the extent that Plaintiff's argument suggests that this Court must accept the well-pleaded factual allegations in Plaintiff's supplemental complaint as true, Plaintiff is undoubtedly correct.  *See, e.g., United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

---

[15] Although Plaintiff cites no case law in support of its recitation of the elements of a First Amendment retaliation claim, it appears that Plaintiff is borrowing from a line of case law applicable to prisoner retaliation claims.  *See, e.g., Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011) ("A prisoner alleging a First Amendment claim of retaliation must allege that '(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him.'" (quoting *Banks v. York*, 515 F. Supp. 2d 89, 111 (D.D.C. 2007)); *see also Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584–86 (D.C. Cir. 2002).  In the absence of any argument from Defendants that the elements of a retaliation claim are different in the case of a private citizen as opposed to a prisoner or public employee, the Court will accept Plaintiff's description of the applicable elements of its claim for the purpose of the Court's futility analysis.

at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Id.* at 678.  And the Court is not obligated to "accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice."  *Kaempe v. Myers*, 367 F.3d 958, 963–65 (D.C. Cir. 2004) (holding that documents cited in but not attached to complaint were public records subject to judicial notice where documents were appended to defendant's motion to dismiss, referred to in the complaint, and integral to plaintiff's claim).

Here, Defendants argue that investigation of an allegation that occurred before Plaintiff filed suit cannot support a plausible claim of retaliation for filing suit, and the Court agrees. Plaintiff protests that the Court should not consider Defendants' "factual denials" of its allegations, and Plaintiff's supplemental complaint does allege that Ms. Schmidt fabricated the July 26 noise complaint "starting just one month after the filing of this lawsuit."  Suppl. Compl. ¶ 59.  But by Plaintiff's own admission, the investigative report into the July 26 noise complaint bears "a final signature date of August 28, 2012," *id.* ¶ 8; *see also* ABRA Investigative Report at 188, Defs.' Ex. N (indicating that Investigator Jones signed and dated the report on August 27, 2012, and that Johnnie E. Jackson, Jr. signed and approved the report on August 28, 2012). Plaintiff did not file this lawsuit until February 11, 2013, Suppl. Compl. ¶ 6, and it no longer claims that the investigative report was fabricated or forged.  *See infra* Part IV.G.2; Pl.'s Opp'n Mot. Sanctions at 8 n.2, ECF No. 22 (describing as "bizarre" that suggestion that Plaintiff alleged that the investigate report was forged).  Additionally, Plaintiff has not alleged facts indicating that Ms. Schmidt was aware of this lawsuit when she notified Plaintiff of the alleged noise violation, or that she had any reason to harbor retaliatory animus against Plaintiff for filing a lawsuit to which she was not a party.  *Cf. Lacey v. Yates Cnty.*, 30 F. Supp. 3d 213, 229

(W.D.N.Y. 2014) (holding that plaintiff "failed to allege any facts tending to support his conclusory allegation that [the defendant] assisted in the fabrication of grand jury testimony against Plaintiff or that [the defendant] sought to retaliate against Plaintiff" for making a complaint where the plaintiff did not even allege that the defendant was told that the plaintiff had made a complaint).

Based on the facts alleged by Plaintiff, the claim that Ms. Schmidt retaliated against Plaintiff for filing a lawsuit in 2013 by fabricating a noise complaint that was investigated in 2012 is, at best, implausible. *See Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *see also Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 295 (D.D.C. 2005) ("The bad faith of government actors is notoriously easy to allege and difficult to disprove, and [plaintiff] cannot avail himself of the discovery process in the hopes of stumbling upon such evidence where he can point to no indication that it exists to begin with. [Plaintiff's] First Amendment claim therefore must be dismissed for failure to state a claim."). The Court therefore denies as futile Plaintiff's motion to supplement its complaint with a claim that Ms. Schmidt fabricated a noise complaint against Plaintiff in violation of Plaintiff's First Amendment rights.

## 2. Count IX: First Amendment Retaliation Claim Based on Board Order of June 6, 2014

Plaintiff's next claim is brought against seven Board members, Ms. Miller, Mr. Alberti, Mr. Brooks, Mr. Jones, Mr. Silverstein, Mr. Rodriguez, and Mr. Short, in both their individual and official capacities. The claim is based on a June 6, 2014, Board order that summarily suspended Plaintiff's liquor license following an assault that occurred in Plaintiff's establishment

on May 24, 2014.  *See* Suppl. Compl. ¶¶ 48, 65; Board Order 2014-247 at 86, Defs.' Ex. K, ECF

No. 19-2.  The Board found that the continued operation of Plaintiff's establishment posed an

imminent danger to the public, based on: (1) the establishment's failure to follow its security

plan, (2) its "failure to protect the crime scene" after a violent incident occurred within the

establishment, (3) a finding that the establishment did "not have sufficient procedures to manage

[its] crowd," and (4) a finding that the establishment had endangered a victim with a head wound

by carrying the injured patron down the stairs to the front door.  Board Order 2014-247 at 81–85,

Defs.' Ex. K.  Plaintiff disagrees with a number of the Board's findings, alleging that the Board's

indefinite closure of its establishment was predicated on information that the Board members

knew to be false, and that it was intended to retaliate against Plaintiff for filing this lawsuit in

violation of Plaintiff's First Amendment rights.  Suppl. Compl. ¶¶ 38–57, 64–71.

      Defendants argue that Plaintiff's retaliation claim against the Board members is futile due

to a combination of quasi-judicial immunity and *Younger* abstention.  Defs.' Opp'n Mot. Suppl.

at 11–12.  Defendants first argue that the Board members are quasi-judicial actors entitled to

absolute immunity for their adjudicatory decisions following show cause hearings.  *See* D.C.

Code § 25-204.01(c)(2)(E) (recognizing that the Board may exercise "quasi-judicial functions"

when "deliberating or making a decision in an adjudication action or proceeding"); *see also Butz*,

438 U.S. at 511–13 (holding that administrative hearing officers were entitled to judicial

immunity); *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C. Cir. 1994) (recognizing as quasi-

judicial an official whose functions are comparable to those of judge, involved in controversies

intense enough to make harassment by litigants realistic, where the system contains adequate

safeguards to dispense with private damages suits); *see also* 42 U.S.C. § 1983 (stating that

"injunctive relief shall not be granted" in any action brought under § 1983 against "a judicial

officer for an act or omission taken in such officer's judicial capacity," "unless a declaratory

decree was violated or declaratory relief was unavailable").  Defendants cite this action as

evidence that show cause hearings before the Board are likely to give rise to civil suits by

dissatisfied litigants, and they note the availability of direct review of Board decisions by the

District's Court of Appeals pursuant to D.C. Code § 2-2510.  Accordingly, Defendants maintain

that Board members cannot be held liable in their individual capacities for issuing a decision

following an adversarial show cause hearing regarding alleged violations of the conditions of a

liquor license.

Once again, Plaintiff has failed to offer any response to Defendants' immunity argument.

In the absence of any opposition from Plaintiff, the Court deems the matter conceded and finds

that for the reasons set forth by Defendants, the Board members acted in a quasi-judicial capacity

and are entitled to absolute immunity for their June 2014 decision to continue the summary

suspension of Plaintiff's liquor license.  *See Cannon*, 952 F. Supp. 2d at 11; *Romeo*, No. 11-CV-

6340, 2013 WL 1209098, at *12; *see also Hopkins*, 284 F. Supp. 2d at 25.

Plaintiff has also failed to respond to Defendants' argument that *Younger* abstention is

appropriate as to this claim because quasi-judicial state agency proceedings pertaining to the

June 2014 Board order were ongoing at the time that Plaintiff filed this supplemental claim.

Defs.' Opp'n Mot. Suppl. at 11–12 (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs.,

Inc.*, 477 U.S. 619 (1986)); *see* Board Order 2014-247 at 86, Defs.' Ex. K (summarily

suspending Plaintiff's license "until the Board issues its final order in a future show cause

proceeding related to the incident on May 24, 2014").

In *Ohio Civil Rights Commission*, the Supreme Court extended the *Younger* abstention

doctrine – a doctrine rooted in principles of equity, comity, and federalism that prevents federal

courts from exercising jurisdiction over ongoing state court proceedings – to state administrative proceedings.  477 U.S. at 627–29 (listing "administrative proceedings looking toward the revocation of a license to practice medicine" as the type of proceeding in which important state interests may be vindicated).   The Court explained that even if a state administrative proceeding did not allow a plaintiff to raise his constitutional claims directly before the agency, *Younger* abstention was still necessary so long as the plaintiff could obtain review of his constitutional claims "in state-court judicial review of the administrative proceedings."  *Id.* at 629; *see also Delaney v. District of Columbia*, 659 F. Supp. 2d 185, 194 (D.D.C. 2009) ("*Younger* precludes federal adjudication when three criteria are met: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims.").

    Plaintiff has failed to offer any response to or refutation of Defendants' argument that *Younger* abstention is required under *Ohio Civil Rights Commission*.   Plaintiff does not dispute that state administrative proceedings were ongoing at the time it filed this claim, that the proceedings implicate important state interests, or that Plaintiff will be afforded an adequate opportunity to raise its constitutional claim before the D.C. Court of Appeals.  In the absence of any opposition from Plaintiff, the Court deems conceded the argument that *Younger* abstention is appropriate as it pertains to Plaintiff's claim regarding the June 2014 Board order.  *See Cannon*, 952 F. Supp. 2d at 11; *Romeo*, No. 11-CV-6340, 2013 WL 1209098, at *12; *see also Hopkins*, 284 F. Supp. 2d at 25.

    In light of Defendants' unopposed assertions of judicial immunity and *Younger* abstention, the Court agrees that granting Plaintiff leave to supplement its complaint with a First Amendment retaliation claim premised on the Board's June 2014 order would be futile.

### 3.  Count X: First Amendment Retaliation Claim Based on Board Order of May 14, 2014

Plaintiff's final First Amendment retaliation claim is based on the May 14, 2014, order approved by six Board members – Ms. Miller, Mr. Brooks, Mr. Jones, Mr. Silverstein, Mr. Rodriguez, and Mr. Short – that required Plaintiff to cease and desist selling alcoholic beverages and cancelled Plaintiff's liquor license.  Suppl. Compl. ¶¶ 25–37, 72–79; Board Order 2014-218 at 63, Defs.' Ex. I, ECF No. 19-2.  The May 2014 order states that Plaintiff failed to appear at a roll call hearing on April 21, 2014, pertaining to Plaintiff's application for renewal of its liquor license.  Board Order 2014-218 at 62–63.  The Board instructed Plaintiff that it had ten days to file a motion for reinstatement, but because the Board did not receive one, on May 14, 2014, the Board dismissed Plaintiff's application for renewal, which in turn obligated the Board to cancel Plaintiff's then-expired liquor license.  *Id.*  Plaintiff alleges that the Board's decision to cancel its license was a closure predicated "upon information they knew or should have known by reasonable inquiry to be false."  Suppl. Compl. ¶ 74.  Specifically, Plaintiff alleges that the Board's reliance on Plaintiff's failure to file a motion for reinstatement as a basis for cancelling its license was inexplicable because Plaintiff had filed a renewal application with ABRA on April 28, 2014.  *See id.* ¶ 35.  Plaintiff thus concludes that the Board's decision to cancel its license was done "to retaliate against the Plaintiff for the filing of this lawsuit."  *Id.* ¶ 75.

Defendants contend that Plaintiff has failed to allege facts stating a plausible First Amendment retaliation claim and that, in any case, the Board members are entitled to quasi-judicial immunity for issuing the May 2014 order.  Although Plaintiff asserts that it was not aware of the April 21 hearing schedule, it does not dispute either its failure to appear or its failure to apply for reinstatement of its application within ten days.  *See* Suppl. Compl. ¶¶ 32–35. Instead, Plaintiff asserts that it filed another renewal application with ABRA on April 28, 2014,

of which the Board "knew or should have known by reasonable inquiry," because the pendency of Plaintiff's renewal application was "readily evident."  *See* Suppl. Compl. ¶¶ 35, 37, 74. Plaintiff maintains that the Board's decision to cancel Plaintiff's license for failure to apply for reinstatement was retaliatory when the Board knew or should have known of Plaintiff's April 2014 application.

There can be no question that as of May 2014, at least the four Board members who were named as Defendants in this suit were aware that Plaintiff had filed a civil complaint against them in February 2013.  But it is not at all clear, Defendants argue, that the Board members were aware of Plaintiff's April 2014 renewal application that it had filed two weeks prior with a separate entity: ABRA.  Defs.' Opp'n Mot. Suppl. at 13–14.  Plaintiff alleges that its application was "readily evident" and that the Board "knew or should have known by reasonable inquiry" about the application, but Defendants argue that actual knowledge of the application was required in order for the Board's decision to disregard the application to have been retaliatory.

Although Plaintiff does not describe why the pendency of its renewal application should have been "readily evident," Plaintiff does assert that it filed its application with an entity overseen by the Board, and that it did so more than two weeks prior to the Board's announcement of its May 14, 2014 order.  *See* Suppl. Compl. ¶¶ 35–36; *see also* Pl.'s Reply at 4 (arguing that Plaintiff adequately alleged the elements of a First Amendment retaliation claim). Additionally, Plaintiff's allegation that the Board should have known of the renewal application is accompanied by the alternative allegation that the Board members "knew" of it, that they nevertheless predicated their decision on incorrect information, and that this resulted in the closure of Plaintiff's establishment.  *See* Suppl. Compl. ¶ 74.  The Court therefore finds that

Plaintiff's First Amendment retaliation claim is not futile due to a failure to allege facts suggesting that the Board had actual knowledge of Plaintiff's renewal application.

Defendants next argue that, as was the case with Count IX, Count X of Plaintiff's supplemental complaint is futile because it is barred by the doctrine of quasi-judicial immunity. Defendants note that Plaintiff's claim is premised on the Board members' adjudication of Plaintiff's application in their quasi-judicial roles, and that as a consequence, the Board members are absolutely immune from damages under § 1983.  Defs.' Opp'n Mot. Suppl. at 14.  Once more, however, Plaintiff has failed to oppose or respond to Defendants' assertion of immunity, and the Court deems the issue of quasi-judicial immunity conceded.   *See Cannon*, 952 F. Supp. 2d at 11; *Romeo*, No. 11-CV-6340, 2013 WL 1209098, at *12; *see also Hopkins*, 284 F. Supp. 2d at 25.  Accordingly, for the reasons stated by Defendants, the Court finds that the retaliation claim against the Board members in their individual capacities based on the May 14, 2014 order is futile.

This does not end the matter, however, because Plaintiff has brought suit against the Board members in both their individual and official capacities, and the doctrine of quasi-judicial immunity extends only to individual capacity claims.  *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 482–86 (5th Cir. 2000) (holding that quasi-judicial immunity is inapplicable in official-capacity suits).  Defendants do not argue, and the record does not clearly establish, that *Younger* abstention is appropriate as to this claim.  The Court therefore must consider whether granting Plaintiff leave to supplement its complaint with this First Amendment retaliation claim against six Board members in their official capacities would be futile.

"Because the real party in interest in an official-capacity suit is the governmental entity and not the named official," *Hafer*, 502 U.S. at 25 (internal quotation marks omitted), Plaintiff's official capacity claim against the Board members is effectively a claim against the District of Columbia.  However, municipalities are not liable under § 1983 for constitutional torts committed by their employees.  Municipalities are liable "only for constitutional torts arising from 'action pursuant to official municipal policy.'"  *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (quoting *Monell v. Dep't Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978)).  And while Plaintiff's supplemental complaint does allege that the Board members were acting "under color of state authority as members of the Alcoholic Beverage Control Board for the District of Columbia Government," Suppl. Compl. ¶ 78, it does not allege that the May 2014 Board Order could be considered a product of the District's policy or custom.

Nevertheless, Plaintiff has argued that such a showing is not required because the Board members are policymakers, and municipal liability is available if a municipality's "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right."  Pl.'s Opp'n Mot. Strike at 3–5 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).  Given the broad discretion that the Board has to decide the matters before it, Plaintiff argues, the Board members must be considered policymakers.  *Id.* at 5–6.  Plaintiff also notes that a policymaker "has authority that is final in the special sense that there is no higher authority," *id.* at 6 (quoting *Gernetzke v. Kemosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001), and that Board orders are reviewable only by the District's Court of Appeals, *id.* at 6.

Plaintiff is correct that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Singletary v. District of Columbia*, 766 F.3d 66, 73–74 (D.C. Cir. 2014) (internal quotation marks and citations omitted) (holding

that D.C. Board of Parole's statutory "authority to render final revocation decisions in individual cases" was "insufficient to create municipal liability unless the decisionmaker had been granted final policymaking authority under D.C. law in the area of parole revocation"). Plaintiff is also correct in noting that the Board has broad authority to make decisions on renewal applications. *See, e.g.*, D.C. Code § 25-313 (requiring applicants to demonstrate the appropriateness of their license renewal request "to the satisfaction of the Board"). Although Plaintiff will ultimately be required to prove that the Board members had final policymaking authority under District law to prevail on its claim, at this stage of the litigation, the Court will not reject Plaintiff's official capacity claim premised on the Board's May 2014 order as futile.

Plaintiff is therefore granted leave to bring its First Amendment retaliation against the Board members in their official capacities based on the Board's May 2014 order, and the claim shall be deemed filed as of today. *See* Defs.' Opp'n Mot. Suppl. at 1 n.1 (requesting that if the Court grants Plaintiff's motion to supplement in full or in part, that it be deemed filed as of the date of the Court's decision to permit Defendants to file a motion to dismiss).

### 4. Counts XI, XII, & XIII: Defamation and 42 U.S.C. § 1985

Counts XI and XII of Plaintiff's supplemental complaint assert that Sergeant Pope committed defamation *per se* and defamation *per quod* under District of Columbia law by making statements about Plaintiff's handling of an assault to an ABRA investigator. Suppl. Compl. ¶¶ 80–94. Count XIII alleges that all Defendants were involved in a conspiracy to deprive Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1985. *Id.* ¶¶ 95–98. Defendants argue that all three claims are futile, and that leave to supplement should be denied. They contend first that Sergeant Pope, as a law enforcement officer, is entitled to absolute immunity for statements he made to an investigator in the course of his official duties

while performing discretionary functions.  Defs.' Opp'n Mot. Suppl. at 14–19 (citing *District of*

*Columbia v. Jones*, 919 A.2d 604, 607–08 (D.C. 2007); *Moss v. Stockard*, 580 A.2d 1011, 1020–

22 (D.C. 1990)).  Additionally, Defendants maintain that Plaintiff has failed to state a claim for

defamation *per se* or defamation *per quod*.  *Id.* at 19–20 (arguing that alleged statements were

neither inherently defamatory nor the cause of the Board's decision and Plaintiff's harm).

Defendants also argue that Plaintiff's § 1985 claim is futile because Plaintiff has not specified

the basis of the claim, providing only a formulaic recitation of the cause of action devoid of any

factual content and failing to state a plausible claim for relief.  *Id.* at 20 (citing *Twombly*, 550

U.S. at 555).

     Although Plaintiff's reply did defend the adequacy of its allegations pertaining to its First

Amendment retaliation claims, in the face of Defendants' futility arguments, Plaintiff mounted

no defense whatsoever of either its defamation claims or its § 1985 claim.  Plaintiff neither

disputes Sergeant Pope's assertion of absolute immunity nor defends the adequacy of its

defamation or § 1985 allegations.   The Court therefore deems Defendants' arguments conceded

and denies as futile Plaintiff's motion to supplement its complaint with two defamation claims

and a § 1985 conspiracy claim.  *See Cannon*, 952 F. Supp. 2d at 11; *Romeo*, No. 11-CV-6340,

2013 WL 1209098, at *12; *see also Hopkins*, 284 F. Supp. 2d at 25.

### G.  Defendants' Motion for Rule 11 Sanctions

     The final matter before the Court is Defendants' motion for sanctions pursuant to Federal

Rule of Civil Procedure 11 based on the claims and allegations contained in Plaintiff's amended

and supplemental complaints.  Defs.' Mot. Sanctions, ECF No. 21.  As to Plaintiff's amended

complaint, Defendants argue that Plaintiff lacked a good faith basis for reasserting claims that

this Court has already dismissed with prejudice.  *Id.* at 6–7.  As to Plaintiff's supplemental

complaint, Defendants argue that Plaintiff lacked a good faith basis for alleging that Ms. Schmidt

forged an ABRA investigative report in retaliation for Plaintiff's lawsuit.  *Id.* at 7–9.

Accordingly, Defendants maintain that Plaintiff violated Rule 11's requirements that an attorney

not file frivolous claims and that the attorney's representations must be based on information,

and belief "formed after an inquiry reasonable under the circumstances."  *See* Fed. R. Civ. P.

11(b).  Defendants seek sanctions in the form of an order that Plaintiff withdraw those claims

barred by *res judicata* and its claim against Ms. Schmidt, as well as an award of Defendants'

costs in bringing the motion for sanctions and $5,000 in additional sanctions to deter future

misconduct.

Under Federal Rule of Civil Procedure 11, the Court may impose sanctions if "a

pleading, written motion, or other paper . . . [is] presented for any improper purpose[;] . . . the

claims, defenses, and other legal contentions [therein] are [un]warranted by existing law[;] . . .

the factual contentions have [no] evidentiary support[; or] the denials of factual contentions are

[un]warranted on the evidence[.]"  *See* Fed. R. Civ. P. 11(b), (c).  The Court applies "an

objective standard of reasonable inquiry on represented parties who sign papers or pleadings."

*Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 554 (1991).  Rule 11 is

designed to ensure that allegations made in a filing "are supported by a sufficient factual

predicate *at the time that the claims are asserted*."  *City of Yonkers v. Otis Elevator Co.*, 106

F.R.D. 524, 525 (S.D.N.Y. 1985).  As such, it is "no answer to a motion seeking Rule 11

sanctions for asserting a baseless claim of fraud to suggest that plaintiffs needed discovery to

ascertain whether the claim asserted was well founded."  *Id.*

## 1.  Reassertion of Previously Dismissed Claims

In response to Defendants' motion for sanctions, Plaintiff maintains that its re-assertion of previously-dismissed claims in its amended complaint was neither frivolous nor done for an improper purpose.  Instead, Plaintiff argues that it had two grounds for re-stating the previously dismissed claims: (1) a concern that the claims not be construed as abandoned for the purpose of an appeal, and (2) Plaintiff's belief that *res judicata* does not apply to the dismissal of claims that were pending reconsideration pursuant to a motion under Rule 59(e).  Pl.'s Opp'n Mot. Sanctions at 4–5.  Plaintiff contends that because it filed a Rule 59(e) motion for reconsideration challenging the Court's dismissal of its claims, no appellate jurisdiction attaches until this Court decides the motion for reconsideration.  *Id.* at 4 (citing Fed. R. App. P. 4(a)(4)).  Accordingly, Plaintiff argues that the decision to omit from its amended complaint those claims pending reconsideration could have caused the Court of Appeals to treat them as abandoned.  *Id.* at 5 (citing *Elliott v. Fed. Bureau of Prisons*, 547 F. Supp. 2d 15, 23 (D.D.C. 2008)).  Plaintiff also contends that a decision to which a pending motion for reconsideration is attached is not yet a final judgment that can give rise to "any kind of *res judicata*."  *Id.* at 5 (citing *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)).

In reply, Defendants assert that Plaintiff is "simply wrong."  Defs.' Reply at 1, ECF No. 23.  Defendants first reject Plaintiff's argument that re-assertion was necessary to preserve the claims for appellate review, noting that the *Elliott* decision on which Plaintiff relies is entirely inapposite, and that it is well-established that a plaintiff can "obtain appellate review of the district court's dismissal of her claims . . . [after] she . . . obtain[s] a final judgment from the district court."  *Id.* at 1–2 (quoting *Blue v. D.C. Pub. Schs.*, 764 F.3d 11, 19 (D.C. Cir. 2014); *see also Bastian v. Petren Res. Corp.*, 892 F.2d 680, 683 (7th Cir. 1990) ("It is not waiver—it is

prudence and economy—for parties not to reassert a position that the trial judge has rejected.");

*Owens v. Fleet Car Lease, Inc.*, No. 09-CV-0967-MJR, 2010 WL 2542028, at *2–4 (S.D. Ill.

June 18, 2010) (imposing sanctions and rejecting plaintiff's argument that its refiling of

previously dismissed claims was not in bad faith because it believed it was necessary to preserve

the claims for appeal).  Defendants further argue that regardless of whether *res judicata* applies,

after this Court dismissed Plaintiff's claims as being without legal merit, Plaintiff knew that they

were without legal merit, and its decision to repeat the same claims nearly verbatim in an

amended complaint is sanctionable.  *See Serritella v. Markum*, 119 F.3d 506, 512 (7th Cir. 1997)

(affirming imposition of Rule 11 sanctions for the repleading of claims previously rejected by the

Court and deeming spurious plaintiff's counsel's argument that he believed that repleading was

necessary for the purpose of appeal).

     The Court agrees with Defendants that *Elliott* provides no support for Plaintiff's position

regarding the need to repeat previously dismissed claims in order to preserve them for appellate

review.  In *Elliott*, the court rejected a plaintiff's request for reconsideration of his Privacy Act

claim not because he failed to reassert it after dismissal, but because the plaintiff had previously

conceded in an earlier filing "that his initial designation did not constitute a Privacy Act

violation."  547 F. Supp. 2d at 22–23.  In the absence of any authority to support Plaintiff's belief

that reassertion of its dismissed claims was necessary, the Court is sympathetic to Defendants'

view that Plaintiff's decision to repeat its RICO and Takings Clause claims nearly verbatim after

they were dismissed by this Court raises serious questions regarding whether Plaintiff had a good

faith belief that those claims were supported by law.

     Nevertheless, the imposition of Rule 11 sanctions is not something courts take lightly;

instead, "Rule 11 sanctions are an extreme punishment for filing pleadings that frustrate judicial

proceedings." *Henok v. Chase Home Fin., LLC*, 926 F. Supp. 2d 100, 104 (D.D.C. 2013) (internal quotation marks omitted). Plaintiff's decision to reassert previously dismissed claims was inadvisable at best. But unlike the attorney in *Serritella*, Plaintiff's counsel had not previously been warned by this Court that such conduct was sanctionable. *See Serritella*, 119 F.3d at 510–11 (affirming $1500 sanction against attorney who continued to reassert claim and arguments that had previously been rejected by the district court when the court had already admonished and censured counsel for that very behavior); *see also Lewis v. Parker*, No. CV 14-163, 2014 WL 4460279, at *15 (D.D.C. Sept. 10, 2014) (warning the parties that reasserting claims previously considered and rejected by the Court could lead to Rule 11 sanctions). Additionally, this Court did not expressly dismiss the claims at issue with prejudice, and Plaintiff's motion for reconsideration of those claims remained undecided at the time that Plaintiff amended its complaint. On these facts, the Court finds that bad faith is not readily apparent, and it will not impose monetary sanctions on the basis of Plaintiff's reassertion of previously dismissed claims. *See also* Fed. R. Civ. P. 11(C)(5) (disallowing monetary sanctions "against a represented party for violating Rule 11(b)(2)").

Additionally, because the Court is dismissing Plaintiff's RICO and Takings Clause claims for failure to seek leave to amend and, alternatively, on grounds of futility, the request that this Court dismiss the claims as a Rule 11 sanction is moot. *See Hourani v. Mirtchev*, 943 F. Supp. 2d 159, 172 (D.D.C. 2013) (choosing "not to impute bad faith on the part of the Plaintiffs, [and] finding ample grounds for dismissing the complaint on . . . substantive grounds"). The Court will therefore deny Defendants' request for Rule 11 Sanctions for Plaintiff's reassertion of previously dismissed claims. *See Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (holding that "the Court has the discretion to determine both whether a Rule 11 violation has occurred and

what sanctions should be imposed if there has been a violation." (internal quotation marks

omitted)).

### 2. Allegation that Ms. Schmidt Fabricated an Investigative Report

Defendants next argue that sanctions are appropriate because Plaintiff brought baseless

claims of fabricating documents against Ms. Schmidt, an attorney with the District's OAG.

Defs.' Mot. Sanctions at 3–5, 7–9.  Defendant contends that the allegation that Ms. Schmidt

fabricated an ABRA investigative report and related documents in retaliation for Plaintiff's

initiation of this suit is wholly unsupported by facts, and that sanctions are appropriate in light of

Plaintiff's failure to undertake a reasonable investigation to determine the truth of its allegation

prior to including it in a court filing.  *See* Fed. R. Civ. P. 11(b) (requiring that an attorney who

signs a court filing "certifies that to the best of the person's knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances . . . the factual contentions have

evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity for further investigation or discovery").

Emphasizing "the inherent implausibility of this claim," Defendants note that the

investigative report that Ms. Schmidt allegedly fabricated bears signatures that pre-date the filing

of this case, and that the ABRA investigator who authored the report testified under oath at a

hearing in January 2014 that a noise complaint against Plaintiff was reported by a neighbor of

Plaintiff's establishment in July 2012 as indicated in the report.  Defs.' Mot. Sanctions at 8.

Additionally, Defendants argue, Plaintiff's attorney could not have believed the allegation that

Ms. Schmidt fabricated the noise complaint and report to retaliate against Plaintiff for filing this

suit because, according to an e-mail that Plaintiff's counsel wrote three months after Ms.

Schmidt provided Plaintiff with notice of the charge, Ms. Schmidt "was wholly unaware of the

pendency of the lawsuit."  E-mail from Mr. LeFande at 87, Defs.' Ex. F, ECF No. 21–2.  And even if Plaintiff's attorney did not know that its allegation was untrue, Defendants contend that he certainly failed to undertake a reasonable investigation into the matter prior to asserting the claim.

In response, Plaintiff argues that the facts set forth in the supplemental complaint describe circumstances that give a "strong factual basis" for Plaintiff's claims against Ms. Schmidt.  Pl.'s Opp'n Mot. Sanctions at 8.  Plaintiff once again mentions the changing allegations regarding the time of day that the noise violation occurred, the seven-month delay in bringing the charge against Plaintiff, and Investigator Jones's inability to remember the complainant's name and precise address at the show cause hearing, as facts suggesting that the noise violation was fabricated.  *Id.* at 6–8.  As for the e-mail conceding that Ms. Schmidt was unaware of this lawsuit months after she charged Plaintiff with the noise violation, Plaintiff's counsel asserts that he was not yet aware that Ms. Schmidt had fabricated the noise complaint at the time he wrote the e-mail, and that discovery is needed to determine what Ms. Schmidt "knew or did not know."  *Id.* at 9 n.3.

Plaintiff then proceeds to assert that its claim against Ms. Schmidt is premised on her fabrication of an alleged noise complaint, not fabrication of the ABRA investigative report pertaining to the complaint, and that "Plaintiff has never alleged that the investigative report itself was somehow a forgery.  That allegation standing alone is rather bizarre under the circumstances and the undersigned attorney does not comprehend its origin."  *Id.* at 8 n.2.  Plaintiff's attorney's contention is nothing short of baffling, considering that Plaintiff's supplemental complaint clearly alleges that "[o]n information and belief, *the August 28, 2012*

*Investigative Report and other documents* related to the March 12, 2013 Notice *were wholly fabricated by Schmidt . . . .*"  Suppl. Compl. ¶ 10 (emphasis added).

If the allegation was included in Plaintiff's filing inadvertently, Plaintiff could have sought to remove it after it the error was brought to its attention by Defendants' "safe harbor letter" on August 7, 2014.  *See* Fed. R. Civ. P. 11(c)(2).  But Plaintiff has not sought to remove or amend the allegation, which remains a part of Plaintiff's supplemental complaint to this day, despite the fact that Plaintiff's counsel admits that the claim "is rather bizarre."  Instead, Plaintiff elected to file an incredibly serious allegation of misconduct premised on Plaintiff's "information and belief" that Plaintiff's counsel now professes not only not to believe, but not to have made in the first place.  Plaintiff's attorney's disavowal of the contents of his own filing makes clear that he has not complied with his "affirmative duty to conduct a reasonable inquiry into the facts . . . before filing."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *see also Clinton v. Jones*, 520 U.S. 681, 709 n. 42 (1997) ("Sanctions may be appropriate where a claim is presented for any improper purpose, such as to harass, including any claim based on allegations and other factual contentions lacking evidentiary support or unlikely to prove well-grounded after reasonable investigation." (internal quotation marks and citations omitted)).

The Court is deeply troubled by Plaintiff's counsel's apparent disregard for the factual content of the pleadings he files before this Court.  Particularly given the gravity of the allegation that Ms. Schmidt fabricated an investigative report and other documents, the Court is wholly unimpressed by counsel's effort to defend its factual allegation by simply denying the allegation's existence.  Worse yet, Plaintiff's counsel's response to the Defendants' safe harbor letter – a mechanism designed to allow parties to address situations like this without the need for

the imposition of sanctions – was cavalier and dismissive.  *See* Defs.' Mot. Sanctions at 2 n.1 (explaining that Plaintiff's counsel responded to Defendants' safe harbor letter in less than thirty minutes, stating "[g]ood luck with that").  And this is not the first time that Plaintiff's counsel has made a baseless allegation that an attorney fabricated documents.  *See Cannon v. District of Columbia*, 873 F. Supp. 2d 272, 286 n.12 (D.D.C. 2012) (noting that "Plaintiffs' unfounded allegations that defendant's attorneys fabricated evidence . . . have already been rejected by the Court" (internal citations omitted)), *aff'd in part, rev'd in part on other grounds*, 717 F.3d 200 (D.C. Cir. 2013); *see also Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (holding that a court considering sanctions may consider "events which did not occur in the case proper but occurred in other cases and are, by their nature, relevant to the pending controversy").

In sum, Plaintiff's admittedly "bizarre" and apparently baseless allegation that Ms. Schmidt fabricated an investigate report and other documents is a serious matter.  The allegation itself is grave, and the decision to reject the opportunity afforded by Defendants' safe harbor letter to correct the matter and avoid sanctions, choosing instead to maintain the allegation while denying its existence, is inexplicable.  Given the fact that this is not the first time that Plaintiff's attorney has made such unfounded allegations, this Court finds that Rule 11 sanctions are warranted to deter future repetition of the conduct of Plaintiff's counsel.   The Court therefore awards Defendants reasonable attorney's fees and costs incurred for their motion for sanctions.  Had this matter progressed further towards trial, the Court may well have considered additional monetary sanctions, but in light of the facts as they stand, the Court believes that awarding fees and costs provides adequate deterrence without imposing a sanction that is more severe than is necessary.  *See Hilton Hotels Corp. v. Banov*, 899 F.2d 40, 46 (D.C. Cir. 1990) ("[A] district

court should impose the least severe sanction adequate to the purpose of Rule 11." (internal quotation marks omitted)).

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to strike the amended complaint or, in the alternative, to dismiss Plaintiff's claims, is granted, Plaintiff's motion to file a supplemental complaint is granted in part and denied in part, and Defendants' motion for sanctions is granted in part and denied in part.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  March 24, 2015                                              RUDOLPH CONTRERAS
                                                                                United States District Judge