**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BEG INVESTMENTS, LLC, | : | |
| | : | |
|    Plaintiff, | : | Civil Action No.:   13-0182 (RC) |
| | : | |
| v. | : | Re Document No.:   32 |
| | : | |
| NICHOLAS ALBERTI, *et al.*, | : | |
| | : | |
|    Defendants. | : | |

## MEMORANDUM OPINION

DENYING DEFENDANTS' THIRD MOTION TO DISMISS

### I.  INTRODUCTION

Plaintiff BEG Investments, LLC, formerly operated the Twelve Restaurant and Lounge in Washington, D.C.  In June 2011, following reports of multiple violent incidents at the restaurant, the District of Columbia Alcoholic Beverage Control Board ("the Board"), of which the Defendants are members,[1] renewed BEG's alcohol license.  As a condition of its renewal, the Board required BEG to hire several D.C. Metropolitan police officers as a "reimbursable detail" to patrol the area surrounding the restaurant.  BEG initially filed suit in February 2013 against six members of the Board claiming that the reimbursable detail condition was extortionate and discriminatory.  BEG later filed a Supplemental Complaint in July 2014 seeking to add additional claims founded on events that took place after BEG had filed its initial complaint.

---

[1] Specifically, defendants Nicholas Alberti, Donald Brooks, Herman Jones, Calvin Nophlin, Mike Silverstein, Ruthanne Miller, Victor Rodriguez, and James Short are current or former members of the Board.  The counts against defendants Amy Schmidt-Banker and Alexander Pope were previously dismissed.  *See BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 40–44, 48–49 (D.D.C. 2015).  The Court will refer collectively to the Board Defendants throughout this opinion simply as "Defendants."

This Court previously granted in part Defendants' motions to dismiss, and has dismissed all but one of the counts stated in BEG's Complaint, Amended Complaint, and Supplemental Complaint.  *See generally BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13 (D.D.C. 2015), ECF No. 28 (hereinafter "*BEG II*"); *BEG Invs., LLC v. Alberti*, 34 F. Supp. 3d 68 (D.D.C. 2014), ECF No. 9 (hereinafter "*BEG I*").  The Court did grant BEG leave to supplement its Amended Complaint to include a claim of First Amendment retaliation.  *See BEG II*, 85 F. Supp. 3d at 45–48; *see also* Supp. Compl. ¶¶ 72–79, ECF No. 18–1.  Now before the Court is Defendants' motion to dismiss that remaining claim.  Because BEG has stated a plausible claim of retaliation, however, the Court will deny Defendants' motion to dismiss.

## II.  FACTUAL BACKGROUND

The Alcoholic Beverage Statute authorizes the Board to "issue licenses to persons who meet the requirements" set forth in statute and to impose "certain conditions" on those licenses if the Board "determines that the inclusion of the conditions will be in the best interest of the locality . . . where the licensed establishment is to be located."  D.C. Code § 25-104(a), (e).  The Board also oversees the Alcoholic Beverage Regulation Administration ("ABRA"), which provides "professional, technical, and administrative staff assistance to the Board in the performance of its functions."  *Id.* § 25-202.

BEG alleges that the Board cancelled its liquor license on May 14, 2014 in violation of BEG's First Amendment rights and in retaliation for BEG's pursuit of this lawsuit.[2]  *See* Supp. Compl. ¶¶ 72–79.  BEG applied for a renewal of its liquor license on September 6, 2013 and the

---

[2] In this opinion the Court discusses only those events relevant to the retaliation claim and hereby incorporates by reference the facts detailed in its earlier Memoranda Opinions.  *See BEG II*, 85 F. Supp. 3d at 19–24; *BEG II*, 34 F. Supp. 3d at 73–75.

Board scheduled a status hearing regarding that application for December 11, 2013. *Id.* ¶¶ 25–26. After BEG's representative fell ill and neither appeared at the hearing nor requested a continuance, the Board dismissed BEG's application and provided BEG with ten days to move to reinstate the application. *Id.* ¶ 26–27; Board Order 2013-605 at 50, Defs.' Mem. Opp. Ex. F, ECF No. 19–2.[3] After BEG so moved, the Board denied the motion, finding that BEG lacked good cause to miss the hearing. Suppl. Compl. ¶ 28–29; Board Order 2014-028 at 54–55, Defs.' Mem. Opp. Ex. G, ECF No. 19–2.

BEG then filed a second application to renew its liquor license on February 7, 2014, and the Board held a hearing on that second application on April 21, 2014.[4] Suppl. Compl. ¶ 30, 32. On May 1, 2014, after BEG had again failed to appear, the Board dismissed the second application. *Id.* ¶ 34. Once again, the Board allowed BEG ten days to move to reinstate its application. *See* Board Order 2014-130 at 2–3, Defs.' Third Mot. Dismiss Ex. A, ECF No. 32–2. No motion was filed.

---

[3] As previously explained, Defendants attached copies of the pertinent Board orders to their prior motion to dismiss, and the court takes judicial notice of those orders. *See BEG II*, 85 F. Supp. 3d at 20 n.4. Page numbers refer to the numbers generated by the Court's ECF filing system.

[4] BEG alleges in its Supplemental Complaint that the Board "issued a new license" to BEG (apparently on the basis of this second application, although the Supplemental Complaint is not entirely clear) "giving an expiration date of September 30, 2016." Suppl. Compl. ¶ 31. BEG goes on to claim that the Board ordered BEG to cease and desist operations, in part, "despite . . . a license stating an expiration of September 30, 2016. *See id.* ¶ 36. Yet, unlike BEG's references to almost every other action the Board took, BEG does not cite to a particular Board order number with respect to this allegation, nor is it immediately apparent from the record whether a new license was ever issued. Moreover, this allegation is in some tension with BEG's claim that the second renewal application was "apparently protested," and its acknowledgment that "the Board held a Roll Call Hearing on the new renewal application on April 21, 2014" and "dismissed the second renewal application for [BEG's representative's] failure to appear.' *See id.* ¶ 32.

3

Instead of continuing to pursue the second application, on April 28, 2014 BEG filed a third renewal application with the ABRA. Suppl. Compl. ¶ 35. On April 30, 2014 (the day before the Board dismissed the second renewal application), BEG also filed its Amended Complaint with this Court. After BEG filed its Amended Complaint, and despite the pendency of the third renewal application, on May 14, 2014 the Board ordered BEG to immediately cease and desist selling alcoholic beverages, citing BEG's failure to move for reinstatement of the *second* renewal hearing. Suppl. Compl. ¶ 37, Board Order 2014-218 at 63, Defs.' Mem. Opp. Ex. F, ECF No. 19–2. Subsequently on May 21, 2014 and in light of the third renewal application BEG had filed, the Board vacated its order, permitted BEG to resume operations, and instructed ABRA's Licensing Division "to process the new renewal application." Board Order 2014-228 at 67, Defs.' Mem. Opp. Ex. F, ECF No. 19–2.

BEG alleges that, because its third renewal application was pending, Defendants based its cease-and-desist order on information that the Board "knew or should have known by reasonable inquiry to be false." Suppl. Compl. ¶ 74. BEG further claims that Defendants entered that order to "retaliate against Plaintiff for the filing of this lawsuit" and to "interfere with the Plaintiff's prosecution of its claims before this Court." *Id.* ¶ 75, 76. This Court previously held that BEG had sufficiently alleged facts "suggesting that the Board had actual knowledge of the Plaintiff's renewal application," and that the claim could proceed against the named Defendants in their official capacities.[5] *BEG II*, 85 F. Supp. 3d at 47.

---

[5] While Defendants contend that BEG "does not allege that any Board member actually knew about the application," Defs.' Mem. Supp. Third Mot. to Dismiss at 3 & n.3, ECF No. 32–1, this Court has already noted that paragraph 74 of the Supplemental Complaint alleges that Defendants acted based on "information *they knew* or should have known by reasonable inquiry to be false." Suppl. Compl. ¶ 74 (emphasis added); *see also BEG II*, 85 F. Supp. 3d at 46–47.

4

Defendants have now filed a Third Motion to Dismiss this remaining claim, arguing that BEG's Supplemental Complaint fails to plausibly allege the causation element necessary to state a claim for First Amendment retaliation and that, in any event, there is no basis for municipal liability. *See generally*, Defs.' Mem. Supp. Third Mot. to Dismiss, ECF No. 32–1. BEG opposes the motion on both grounds. *See generally* Pl.'s Mem. Opp., ECF No. 33.

### III.  ANALYSIS

#### A.  Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to provide the defendant with fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion must presume that the complaint's factual allegations are true and construe those allegations liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Although it is unnecessary for the plaintiff to plead all elements of his prima facie case in the complaint, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), to survive a motion to dismiss the complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in

fact).'" *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of any legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### B.  Defendants' Third Motion to Dismiss

To establish a claim of First Amendment retaliation, a plaintiff must prove: "(1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.'" *Doe v. District of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). Defendants do not challenge BEG's complaint with respect to the first two elements. Instead, Defendants' only arguments in favor of dismissal are that BEG failed to plausibly allege the causation element and that BEG is unable to establish that the District is liable for the Board's allegedly unconstitutional action.

### 1.  The Causation Element

To satisfy the causation element, "'a plaintiff must allege that his or her constitutional speech was the 'but for' cause of the defendants' retaliatory action."[6] *Doe*, 796 F.3d at 107 (quoting *Aref*, 774 F. Supp. 2d at 169). And that inquiry "is a subjective one." *Id.* (citing *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008)). Namely, a plaintiff must demonstrate that the

---

[6] Unlike Defendants, *see* Defs.' Mem. Supp. at 2, the Court does not read BEG's somewhat perplexing and irrelevant invocation of *Hartman v. Moore*—which added an additional requirement that the plaintiff show an absence of probable cause for claims of retaliatory prosecution, 547 U.S. 250, 252, 265–66 (2006)—as an attempt to argue otherwise.

defendants were "subjectively motivated" to take their allegedly retaliation action *because of* the plaintiff's protected activity. *Smith*, 532 F.3d at 1278. Causation "may be inferred—especially at the pleading stage—when the retaliatory act follows close on the heels of the protected activity." *Smith v. De Novo Legal, LLC*, 905 F. Supp. 2d 99, 104 (D.D.C. 2012). Indeed, the D.C. Circuit "has held that a close temporal relationship may *alone* establish the required causal connection," *Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2005) (emphasis added), if "the two events are 'very close' in time," *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Defendants contend that the two week period between when BEG filed its Amended Complaint and when the Board ordered BEG to cease and desist serving alcohol is too lengthy to plead a plausible causal connection.[7] *See* Defs.' Mem. Supp. at 6–8. To support that contention, Defendants cite a smattering of out-of-circuit decisions for the proposition that "the difference in time must be measured in days, rather than in weeks or months" for close temporal proximity to plausibly support a claim of retaliation. *Id.* at 7 (quoting *Fischer v. Transue*, 1:04-cv-2756, 2008 WL 3981521, at *10 (M.D. Pa. Aug. 22, 2008)).

Simply put, Defendants' argument is contrary to this Circuit's precedent. There is, of course, "no 'hard-and-fast rule' regarding the temporal proximity that must exist between

---

[7] It is not immediately clear whether BEG is alleging that the Amended Complaint is the protected activity upon which its retaliation claim is predicated. BEG's Supplemental Complaint generally alleges that Defendants "retaliate[d] against the Plaintiff for the filing of this lawsuit." Suppl. Compl. ¶ 75. Although one could perhaps read that reference as limited to BEG's initial complaint filed on February 11, 2013, the Defendants accept in their motion that BEG "alleges a First Amendment retaliation claim based on the allegation that Defendants retaliated against Plaintiff *for filing the Amended Complaint* in this lawsuit by issuing the cease-and-desist order." Defs.' Mem. Supp. at 5 (emphasis added). The Court therefore assumes the same for purposes of this opinion. *Cf. Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012) ("[W]e have held that courts should consider later protected activity in determining whether evidence of temporal proximity satisfies the causation element.").

7

protected activity and the adverse action.'" *Manuel v. Potter*, 685 F. Supp. 2d 46, 68 (D.D.C. 2010) (quoting *Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 218 (D.D.C. 2008)).  While the Supreme Court has suggested that "in some instances a three-month period . . . may, standing alone, be too lengthy to raise an inference of causation," neither the Supreme Court nor the D.C. Circuit "has established a bright-line three-month rule."  *Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012).  This Circuit has held on several occasions that a period of one month or shorter typically suffices to state a prima facie claim and raise a plausible inference of retaliation.  *See, e.g.*, *id.* at 1358–59 (finding evidence that the plaintiff was denied information about a position and then passed over for that position "approximately one month later" sufficed "to establish a prima facie case of retaliation"); *Woodruff*, 482 F.3d at 529 (concluding that the plaintiff stated a prima facie case of retaliation, and "a reasonable finder of fact could infer causation . . . without more," where "less than a month separated" the plaintiff's protected activity and the allegedly retaliatory action); *Singletary*, 351 F.3d at 525 (holding that the district court erred in concluding that the plaintiff failed to state a prima facie case where he was denied a promotion "the month after he filed his appeal with the D.C. Court of Appeals").  Similarly, this Court has held that where a plaintiff alleges that an adverse action took place "only a month after" he engaged in protected activity, the "timing is suspicious enough for the court to infer," and for the plaintiff to have plausibly alleged, causation.  *Smith*, 905 F. Supp. 2d at 104.

      The two week period alleged here provides an even closer temporal association between BEG's protected activity and the Board's allegedly retaliatory action.  Ultimately, to survive summary judgment and create a genuine issue of material fact as to causation, BEG may need to proffer more evidence than simple temporal proximity.  *See Doe*, 796 F.3d at 107 (concluding that, although "close temporal proximity . . . may be sufficient to allow a claim to survive

summary judgment," where, "as here, there is substantial unrebutted evidence that the defendants acted with subjective good faith, summary judgment is appropriate on the First Amendment claims"); *Paulk v. Architect of the Capitol*, 79 F. Supp. 3d 82, 91 n.10 (D.D.C. 2015) ("[C]ourts in this Circuit view temporal proximity as persuasive, but not dispositive, evidence of retaliation"). But for purposes of this motion to dismiss, because "the close temporal proximity of the protected behavior and the alleged retaliation" suggest that a causal relationship exists between the two, "[n]o more is necessary to survive Rule 12(b)(6) dismissal." *Saint-Jean v. District of Columbia*, 846 F. Supp. 2d 247, 259 (D.D.C. 2012).[8]

Defendants also argue that because defendants Short and Rodriguez were not named in the Amended Complaint no retaliatory animus can be inferred against them and that it is "not plausible" that Short and Rodriguez "retaliated against Plaintiff for filing that pleading." Defs.' Reply at 5; Defs.' Mem. Supp. at 8–9. This contention is unavailing under the circumstance presented in this case. Short and Rodriguez were rightfully not named as defendants in the Amended Complaint because all of the events alleged therein took place before they were members of the Board. To be sure, the fact that certain individuals were not named in a complaint may inform the inferences that can plausibly be drawn about an individual's motivations. *See Vickers v. Powell*, 493 F.3d 186, 195–96 (D.C. Cir. 2007) (affirming grant of summary judgment on plaintiff's retaliation claim, and concluding that a reasonable jury would

---

[8] Because the Court concludes that the temporal proximity itself suffices to plausibly state a claim, it is unnecessary to consider Plaintiff's claim that, because litigation was ongoing, the events were "fully concurrent." Pl.'s Mem. Opp. at 4. Similarly, the Court need not determine whether there is "pattern of antagonism" that would suffice to establish causation here. *See* Defs.' Mem. Supp. at 7–8 (arguing that the facts here show no such pattern); *see also Taylor v. Solis*, 571 F.3d 1313, 1323 (D.C. Cir. 2009) (citing a Third Circuit decision for the proposition that a "plaintiff can establish a link between his or her protected behavior and [the alleged reprisal] if the employer engaged in a pattern of antagonism in the intervening period" (internal quotation marks omitted)).

be unable "to find a retaliatory motive" on the part of the plaintiff's supervisor, where a different employee was the "focus of [the plaintiff's] discrimination claims" and the plaintiff had "failed to put on any evidence to show that [her supervisor's] decision was in any way influenced by [the other employee]"). But BEG's retaliation claim here is premised on actions that the Board took after BEG filed its Amended Complaint. And by *that* time Short and Rodriguez had become members of the Board. By virtue of their Board positions, they were necessarily "affected by" the Amended Complaint. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996). Given the short two week period between when BEG filed the Amended Complaint and the Board's subsequent order, and the fact that Short and Rodriguez acted in concert with the other Board members who were named in the Amended Complaint, BEG's allegations suffice to plead a plausible retaliation claim. At this stage of the litigation, the fact that Short and Rodriguez were not named as defendants in the Amended Complaint is insufficient to dispel the inference of retaliation raised by temporal proximity. To the extent that BEG alleges that the Board intended to "retaliate against" or "intimidate" BEG because it filed an Amended Complaint alleging claims against members of the Board in their official capacity, Short and Rodriguez could plausibly share in that intent. *Cf. Sosa v. Hiraoka*, 920 F.3d 1451, 1458–59 (9th Cir. 1990) ("Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims.").

### 2. Municipal Liability

As an alternative ground for dismissing BEG's retaliation claim, Defendants contend that BEG has failed to adequately allege a basis for municipal liability against the District of Columbia. The Court concludes otherwise.

Section 1983[9] permits an individual to bring an action against any "person" who subjects an individual or causes an individual to be subjected to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 48 U.S.C. § 1983. The Supreme Court has construed the word "person" to include municipalities and other local governmental bodies. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978). Despite the existence of municipal liability, the Court has "consistently refused to hold municipalities liable under a theory of *respondeat superior*." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 403 (1997). That limitation ensures that "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

To establish municipal liability, then, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Brown*, 520 U.S. at 403. A municipality can establish a policy or custom in several ways: by explicitly setting a government policy that violates the Constitution; by acting through a municipal policymaker; by consistently adopting as a custom, through a policymaker's failure to act, the actions of subordinate officials; or by failing to respond in a way that demonstrates deliberate indifference to the risk that constitutional violations will result. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted). To determine whether a particular individual or entity is a government's authorized policymaker, a court must assess the relevant state law. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 786 (1997). Where state law indicates that "the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it

---

[9] The Court previously inferred that BEG's retaliation claim was brought under § 1983, given BEG's damages request and its references to constitutional violations committed while acting under the color of state authority. *See BEG II*, 85 F. Supp. at 22 n.5.

11

surely represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481.

Here, Defendants claim that the Board is not a final policy maker, relying heavily on the D.C. Circuit's recent decision in *Singletary v. District of Columbia*, 766 F.3d 66 (D.C. Cir. 2014). *See* Defs.' Mem. Supp. at 9–11. The plaintiff in *Singletary* had brought a section 1983 action against the District of Columbia alleging that the District was liable for its Parole Board's decision revoking his parole on the basis of "unreliable multiple-hearsay testimony." 766 F.3d at 68. The D.C. Circuit concluded that the Parole Board's revocation decision could not be attributed to the District of Columbia and that the Board was not "a final policymaker for the District on matters of parole-revocation policy." *Id.* at 73. The court found it indicative that the Mayor—and not the Board—possessed rulemaking authority. *Id.* at 74. While the Circuit conceded that the Board "possessed authority to render final revocation decisions in individual cases," it noted that the Board was not "authorized to promulgate general rules and other policies" and that there was no suggestion the Board had "acted under any such rule when it revoked Singletary's parole based on unreliable evidence." *Id.* Consequently, the Circuit held that the Board was "'constrained by policies not of [its] making," including regulations requiring that parole violations to be found by a preponderance of the evidence. *Id.* Thus, the Board's "decision to 'depart[]' from those policies . . . was not an 'act of the municipality.'" *Id.* at 74, 73 (alteration in original) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.)).

Defendants argue that the Board here "is not a final policy maker for the same reasons that the Board of Parole [was] not" in *Singletary*. Defs.' Mem. Supp. at 10. Conceding that the Board "has the final authority to decide the outcome of individual applications before it,"

12

Defendants nevertheless note that the Board "lacks the authority to create policies in the area implicated by this case." *Id.* at 10–11. Taking an even broader tack in their reply, Defendants claim that the "D.C. Circuit has held that the final authority to decide a particular case does not make a board a policymaker for purposes of municipal liability."[10] Defs.' Reply at 6.

Defendants read *Singletary* far too broadly. The Supreme Court has instructed that the relevant inquiry is not whether a municipal official or entity acts on behalf of the municipality "in some categorical, 'all or nothing' manner." *McMillian*, 520 U.S. at 785. Rather, a court must be more precise and "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* In *Singletary*, the entire thrust of the D.C. Circuit's opinion examined the ability of the Parole Board to engage in rulemaking. 766 F.3d at 73–74. Because a regulation promulgated by the Parole Board's policymaking superiors forbade it from considering unreliable evidence, the Circuit concluded that the Board lacked the authority to depart from that regulation in Singletary's case. *Id.* at 74. But that focus does not mean that a decisionmaker must *always* have rulemaking authority for municipal liability to lie. Such a holding would conflict with cases that have found municipal liability warranted where state law empowered a particular government official to make a particular, one-time decision, without any reference to whether those officials possessed broader rulemaking authority.[11] *See, e.g.*, *Pembaur*, 475 U.S. at 484–85 (holding that a County

---

[10] BEG named the Board members individually (and in their official capacities) in its complaint. Defendants have construed BEG's claim as a claim against the Board itself. *See* Defs.' Mem. Supp. at 10 n.7. The Court agrees. *See McMillian*, 520 U.S. at 785 n.2 (explaining that "a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent" (internal quotation marks and alterations omitted)).

[11] Indeed, the Circuit *distinguished* the Parole Board's ability to make individual Parole determinations from its ability to engage in rulemaking, and it discussed approvingly the Supreme Court's cases holding that municipal liability can be established based on a single

13

Prosecutor acted as a final decisionmaker when he provided instructions to the Sheriff's Office to forcibly enter a physician's clinic to serve writs of attachment).

Beyond pointing to the Board's inability to promulgate alcohol regulations, Defendants do little to contest the District's municipal liability.[12]  Unlike the plaintiff in *Singletary*, however, BEG does not claim that the Board here diverged from any otherwise applicable rule or regulation.  BEG's claim is that the Board acted unlawfully when it cancelled BEG's license and ordered BEG to cease and desist serving alcohol immediately, despite the Board's knowledge of a pending third application.  D.C. law grants the Board final authority "to suspend or revoke licenses and impose civil fines as authorized" by law or regulation.  D.C. Code § 25-201.  There is no indication that D.C. law conditions those decisions upon review by other government officials or entities.  Rather, pursuant to the D.C. Administrative Procedures Act an applicant typically petitions the D.C. Court of Appeals directly for review.  *See id.* § 25-826 (providing for appeal from a summary revocation or suspension decision in accordance with Chapter 5 of Title 2 of the D.C. Code); *id.* § 2-510 (providing for review of "an order or decision of . . . an agency" by "filing in the District of Columbia Court of Appeals a written petition for review"); *see also, e.g.*, *Levelle, Inc. v. D.C. Alcoholic Beverage Control Bd.*, 924 A.2d 1030 (D.C. 2007) (reviewing revocation of a liquor license); *Dupont Circle Citizens Ass'n v. D.C. Alcoholic Beverage Control Bd.*, 766 A.2d 59 (D.C. 2001) (reviewing the award of a liquor license).

---

decision if that decision "is properly made by [the] government's authorized decisionmaker." *Singletary*, 766 F.3d at 73 (quoting *Pembaur*, 475 U.S. at 481, 480).

[12] BEG points to portions of the D.C. Register to claim that the Board does have authority to promulgate regulations, but the Court understands those postings to only provide notice of proposed and adopted regulations which, Defendants point out, the statute requires be published in the D.C. Register and otherwise be made available to the public.  *See* Pl.'s Mem. Opp. at 6–7; Defs.' Reply at 7; *see also* D.C. Code § 25-211(d)(1), (e).  Section 25-211 indicates that only the Mayor may propose regulations to the D.C. City Council.  *See generally* D.C. Code 25-211.

14

Accordingly, the Board's decision to cancel BEG's license was made "by the government's authorized decisionmakers" over alcohol licensing and thus "surely represents an act of official government 'policy.'" *Pembaur*, 475 U.S. at 481. BEG alleges that the Board was subjectively motivated to cancel BEG's license in retaliation for BEG's exercise of protected First Amendment activity. Such "proof that a municipality's legislative body *or authorized decisionmaker* has intentionally deprived a plaintiff of a federal protected right necessarily establishes that *the municipality* acted culpably" and is therefore liable. *Brown*, 520 U.S. at 405 (emphases added). Therefore, to find municipal liability here it *is* sufficient that the Board has final authority to decide whether to cancel, revoke, or suspend a license in a particular. It would contravene decades of Supreme Court precedent to hold otherwise. *See, e.g.*, *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (explaining that a court must identify the official "with final policymaking authority . . . concerning the action alleged to have caused the particular constitutional or statutory violation at issue"); *cf. Pembaur*, 475 U.S. at 483 (plurality op.) (noting that "municipalities often spread policymaking authority among various officers and official bodies"). This Court does not read *Singletary* to mark such a dramatic departure from settled law or to hold that that an entity's inability to promulgate regulations is controlling when a plaintiff challenges a decision that the government entity is empowered to make.

As a final shot across the bow, Defendants argue that the Board was "constrained by policies not of [its] making" just like the Parole Board in *Singletary*. Defendants cite to a D.C. regulation requiring that the Board allow an entity's expired license to continue in effect until the Board renders its final decision on an application. Defs.' Mem. Supp. at 11 (alteration in original) (quoting *Singletary*, 766 F.3d at 74); *see also* D.C. Mun. Reg. tit. 23, § 101.2. This argument is unavailing as a factual matter. The Board's May 1 decision dismissing BEG's

15

application was a final decision by the Board: the Board's May 14 order cites that regulation, explicitly identifies its May 1 decision as "the final decision of the Board," and explains that because it had rendered a final decision, it could "no longer allow [BEG] to operate under an expired license." Board Order 2014-218 at 63, Defs.' Mem. Opp. Ex. F, ECF No. 19–2. Thus, the Board appears to have acted entirely in line with that regulation when it canceled BEG's license (at least taking Defendants' claim that the Board had no knowledge of the third application as true).[13]

Accordingly, BEG has adequately pled municipal liability in these circumstances.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Third Motion to Dismiss (ECF No. 32) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 10, 2015                                          RUDOLPH CONTRERAS
                                                                   United States District Judge

---

[13] If, contrary to their prior position, Defendants' current position is that the Board members were in fact *aware* of BEG's third application, and canceled the license nonetheless in violation of its own regulations, then the Court, in the interest of justice, may have to reconsider claims against the Board members in their individual capacities.